660     SUPREME COURT OF WISCONSIN.     [81

Lafebre and another vs. The Board of Education of Superior.

`Lafebre and another, Appellants, vs. The Board of Edu-
cation of the City of Superior, Respondent.

*February 27 — March 22, 1892.*

*Contracts: Consideration: Evidence: School districts.*

One M. contracted with a school district to build a school-house for
$21,750. Plaintiffs, as subcontractors, furnished materials and per-
formed work on the building to the value of $878. M. abandoned
the contract and did not pay plaintiffs. Afterwards, at a regular
annual meeting of the school district, plaintiffs' claim for $878 was
presented and allowed, and a tax was voted to pay it. After said
tax was collected, an order for the amount was issued to plaintiffs,
but on presentation thereof payment was refused by the treasurer
on the ground that their claim was not legal. In an action to re-
cover the amount due on said order, it is *held* that evidence should
have been admitted on behalf of plaintiffs to show that up to the
time he abandoned the contract M. had done work thereon esti-
mated by the superintendent to be worth nearly $5,000 more than
had been paid to him; that the school-house could not have been
built for the contract price; and that when completed it was worth
$6,000 more than the contract price. Such evidence would have
tended to show a valid consideration for the promise of the school
district to pay plaintiffs' claim.

APPEAL from the Circuit Court for *Douglas* County.

Action to recover the amount due upon a school order,
payment of which had been refused. The facts are stated
in the opinion. The trial was by the court, a jury having
been waived, and resulted in a judgment for the defendant.
The plaintiffs appeal.

For the appellants there was a brief by *John Brennan*
and *R. M. Bashford*, and oral argument by *Mr. Bashford*.
1. The action of the annual meeting of the school district
in allowing this claim and levying a tax for its payment
was legal and valid; and the plaintiffs may maintain an ac-
tion to compel its payment, although there was no legal
obligation upon the part of the school district to pay for
labor and material furnished under this subcontract. *Brod-*

*head v. Milwaukee*, 19 Wis. 652; *State ex rel. McCurdy v. Tappan*, 29 id. 672; *Stockdale v. School District*, 47 Mich. 226; *Brewster v. Syracuse*, 19 N. Y. 116; *Friend v. Gilbert*, 108 Mass. 408; *People ex rel. Blanding v. Barr*, 13 Cal. 343; *Sherman v. Carr*, 8 R. I. 431; *Baker v. Windham*, 13 Me. 74; *Wilkinson v. Cheatham*, 43 Ga. 258; *Meech v. Buffalo*, 29 N. Y. 210; *Howell v. Buffalo*, 37 id. 272; *Curran v. Holliston*, 130 Mass. 274.   2. As showing an equitable consideration for the allowance of this claim, the plaintiffs should have been permitted to prove the value of the school building and the substantial manner of its construction when completed in accordance with the plans and specifications. *Friend v. Gilbert*, 108 Mass. 408, 411; *Scofield v. McGregor*, 1 Thomp. & Cook, 404; *Stockdale v. School District*, 47 Mich. 226; *Fuller v. Groton*, 11 Gray, 340; *Nelson v. Milford*, 7 Pick. 18, 27; *Bancroft v. Lynnfield*, 18 id. 566. 3. The testimony on behalf of the plaintiffs shows that they asserted a claim against the school district, which, if true, imposed a legal obligation for its payment; and other evidence offered on their behalf, which was rejected, tended to establish the same fact.   The allowance of the claim under such circumstances constituted a compromise and created a binding obligation upon the district, which may be enforced in this action.   Sec. 3328, R. S.; *Wilkinson v. Hoffman*, 61 Wis. 637; *Kercheval v. Doty*, 31 id. 476, 484; *Calkins v. State*, 13 id. 389, 394; *Young v. French*, 35 id. 111, 118; *Griswold v. Wright*, 61 id. 195; *Hewett v. Currier*, 63 id. 393; *Fuller v. Green*, 64 id. 159, 168; *Zimmer v. Becker*, 66 id. 527; *Saxton v. McNair*, 71 id. 459.

For the respondent there was a brief by *Ross, Dwyer & Smith*, and oral argument by *C. Smith*.   1. Plaintiffs' claim is not " founded in equity and justice," even " in the largest sense of those terms," and " will not support a tax." There is no pretense in this case that, as in *Friend v. Gilbert*, 108 Mass. 408, the contract of plaintiffs was performed with

special "fidelity," or even that theirs was a "losing contract." They complain, however, that they were not allowed to prove that something was equitably due to McGee. Being imbued with the doctrine of "*imputed* righteousness," they go upon the thought that there is such a thing as *imputed* equity. It does not appear that McGee, plaintiffs' debtor, is or ever has been insolvent, or that for any reason the money could not or cannot be made of him. The district seems simply to have volunteered to pay another's debt. 2. Granting that the vote of the district was legal, plaintiffs' remedy is by *mandamus. Frey v. Fond du Lac*, 24 Wis. 204, and cases cited. 3. There is nothing in plaintiffs' position that the allowance of their claim was a compromise of a controverted matter. The court is asked to *surmise* what took place at the meeting. It was for plaintiffs to prove that they were pressing their claim upon the district, believing that they had a *legal right* to its payment, and it was allowed as a compromise of a disputed claim. *Bellows v. Sowles*, 55 Vt. 391; *Gregg v. Weathersfield*, id. 385; Anderson, Law Dict. 218.

ORTON, J. The following are in substance the facts: On the 16th day of February, 1888, one John McGee entered into a contract with school district No. 2 of the town of Superior to build a school-house for said district for the sum of $21,750, to be completed by the 15th day of October following. The plaintiffs performed work on said school-house for McGee, and furnished material therefor, to the value of $878; and McGee afterwards, on the 13th day of November, 1888, abandoned his contract, and left said sum so due the plaintiffs unpaid. The said school district had paid McGee only $15,142 on his contract. At a regular annual meeting of said school district on July 7, 1890, the said claim of the plaintiffs was duly presented and allowed at said sum, and a tax voted to pay the same, and said tax

was thereafter collected, and the money is yet in the treasury. An order was issued to the plaintiffs therefor on the treasury, but when presented the treasurer refused to pay the same on the ground, for the first time, that the school board contested the legality of said claim. This action is brought against the defendant, as the successor of said district No. 2, to recover said sum.

On the trial the learned counsel of the defendant contended, and the court so found, that the plaintiffs' claim was against McGee alone, and not a lawful charge against the school district. R. L. Hunter, the superintendent of said school-house, was asked as a witness by the learned counsel of the plaintiffs what the full estimates for the work were on the 28th day of October, 1888, and on the 13th day of November following, when the said McGee abandoned the job. The court sustained the objection thereto. He was then asked what the value of the building was when completed, with the same ruling; and was asked further if such value was not exceeding $25,000, with the same ruling. He was then asked whether such value did not exceed the contract price by the sum of $6,000. The learned counsel of the plaintiffs offered to show also that the building, when completed according to the plans and specifications in the McGee contract, was of the value of $26,000; that the estimate allowed McGee on the 27th day of October, 1888, on his work was $20,063.33, and that he had only been paid $15,142, and he continued to work on the school-house until the 13th day of November following, to the value of $1,000, for which he received no estimate; and that McGee could not have completed the building at the contract price without great loss. The above question and offers were rejected by the court.

This testimony, if allowed, would have shown, *first*, that McGee, up to the time he went away and left the job, had done work estimated by the superintendent to be

Lafebre and another vs. The Board of Education of Superior.

worth $20,063.33, and $1,000 afterwards, and was paid only $15,142; *second*, that the job could not have been completed at the contract price; *third*, that the building, when completed, was worth $6,000 more than the contract price. Although it was not proved as a fact, the inference is very strong that McGee abandoned the job because he could not go on with it without great loss. This shows another important fact: that when McGee abandoned the job the district owed him about $5,000 on his estimated and actual work on the building. These facts would have shown reasons of justice, fairness, equity, honesty, and morality for the allowance of this claim of the plaintiffs, and the solemn promise to pay it by the district. The people paid their taxes to pay it, and the board gave the plaintiffs an order upon this fund for it. The only question is whether there was sufficient consideration for the promise of the defendant to pay the plaintiffs for their work. The district has never paid it to McGee, but owes him six times this amount. The district has had the benefit of the work and labor performed upon this schoolhouse and of the materials furnished therefor by these plaintiffs, and made a profit of several thousand dollars out of the labor and materials of McGee and the plaintiffs, and owe McGee many times more than this amount, and, after promising to pay the plaintiffs, now refuse. This would have been the case before the court if the testimony offered and offers made had been received.

By the utmost strictness of law the claim of the plaintiffs is against McGee and not against the district. But that is not the question. Is the solemn promise of the district to pay it supported by any valid consideration? The action is on the order of the district, protested by the treasurer. There is more than a simple promise here. It is executed to the extent of having obtained the money by taxation, and having it on hand in the treasury, and giving an order for it.

It is said that corporations have no souls, but it was supposed that municipal corporations, that are the disinterested agents of the public, formed an exception to this rule, although some who control them do not. The district can well afford to pay this demand. They have a profit in their treasury, made out of this job, of many times the amount, and they will lose nothing by paying it which in moral honesty they ought to keep. They have the value and benefit of the plaintiffs' labor and materials. By their hard contract with McGee they broke him down, and he is unable to pay the plaintiffs. They can pay them and lose nothing. The law does not require a *valuable* consideration for a promise. A *good* consideration is sufficient. Motives of natural duty, generosity, and prudence, or a moral obligation to do what is right, will support a promise founded on an executed contract. *Sanders v. Wagonseller*, 19 Pa. St. 248. The statute of frauds only requires a promise to answer for the debt of another to be in writing to be valid. This promise was not only in writing, but of record. The district promised to pay the claim which McGee owed the plaintiffs, and recorded it, and gave the plaintiffs a written order for it. Such a promise in writing is based upon the consideration of the contract with such other person, and therefore valuable. The district has the benefit of the plaintiffs' labor and materials, which constitutes a valuable consideration for the promise to pay them. *Hoile v. Bailey*, 58 Wis. 434.

This is not the first time that a municipal body has been persuaded by some generous persons to hold a contractor to the utmost strictness of the contract and the law, on the ground that the officers had no right or authority to use any liberality or discretion in settlement with a contractor, or by their promise to pay him. In *Colby v. Franklin*, 15 Wis. 311, the plaintiff had a contract with the town to fill up and grade a deep ravine, with specifications. The last

payment was to be made when completed and accepted by the supervisors. He did not perform the contract according to the specifications. The grade was less, and the cuts not as wide, as the contract provided. The supervisors nevertheless accepted the work, and were about to make payment, when they were persuaded to think that they had no right or authority to accept the work without a strict performance of the contract, and they refused to pay him. The late Chief Justice COLE said in the opinion: "There can be no doubt but that it was competent for the supervisors, in behalf of the town, to waive any departure from the specifications in the contract. They were the agents of the town, duly authorized to act and speak for it in that behalf." In *Jackson v. Cleveland*, 15 Wis. 107, the contract between the parties authorized the defendant, in case the plaintiff did not progress rapidly enough in his work, to determine that he had abandoned the contract, and declare it void. The defendant did so, and employed others to do the work. When this took place, the estimates of the plaintiff's work amounted to some $3,000 more than he had received. The defendant promised to pay that to the plaintiff, notwithstanding he was under no legal obligations to pay it. It was said in that case by the same learned chief justice: "So far as the contract was performed and was actually beneficial to the appellant, *justice* would seem to require that he should make compensation, although he might have the right to contract for the completion of the work with other parties, in case it was abandoned." In the leading case of *Brodhead v. Milwaukee*, 19 Wis. 624, the tax for paying bounties for volunteers was sought to be enjoined on the ground that there was no sufficient consideration moving to the city to support such a tax. The tax was upheld on the ground of *equity* and *justice*, in a very able and elaborate opinion of the late Chief Justice DIXON, in which he said: "In addition to these, I understand it is not denied that

claims founded in *equity* and *justice*, in the largest sense of these terms, or in gratitude or charity, will support a tax." This was a tax, also, and more, and the defense in this case is indirectly an attack upon the power of the district to raise this money by taxation. If this tax can be supported on the same grounds, then it follows that the money raised thereby belongs to the plaintiffs, and they ought to recover in this case.

How can it possibly be claimed that the promise and tax in this case are not founded in "equity and justice?" In *Curran v. Holliston*, 130 Mass. 274, in a case similar to this, it is said: "It is to be presumed that the town meeting [the school district] determined that it was just and equitable that the labor performed by the plaintiff for the benefit of the town [school district] should be paid for by the town [school district], and we cannot reverse that decision." *Friend v. Gilbert*, 108 Mass. 408, is a case clearly in point, on a promise to pay a subcontractor. The court said: "The subject matter, namely, the construction of a town house [school-house], is within the powers of the town [district]. The vote is to pay money as a compensation for such construction. We are of the opinion that the town [district] had legal authority to pass the vote as an incident of their general power over the subject matter. If, by reason of the fidelity with which Watson [the plaintiffs] has performed his work, the town has received the benefit, and it is *just and equitable* that he should receive compensation in addition to his contract, we see no reason why the town [district] should be prohibited from making such compensation." In *Stockdale v. Wayland School District*, 47 Mich. 226, the electors at an annual school meeting, as here, voted to allow a contractor, for building a school-house, an extra compensation. Judge COOLEY said of the plaintiff: "He had a *strong equity* to all that was allowed him; and it has often been decided that municipal corporations, like indi-

viduals, need not stand on *strict legal rights*, but might recognize *equitable claims*, and provide for them."

These pertinent authorities are amply sufficient to justify the school board in making this allowance to the plaintiffs, and in raising the money by tax to pay it. Of course, all this is upon the hypothesis that the facts stated in the offers of evidence and implied in the questions rejected by the court are sustained. We have treated this case as if the evidence was in the case, on the ground that it ought to have been admitted. Nothing is more clear than that this evidence is admissible. To reject these facts constitutes a mistrial of the case, with many material facts rejected. But, on the facts appearing in the answer and stipulation of the parties, it is by no means clear that the plaintiffs were not entitled to a judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to grant a new trial.