TRANSFER REALTY COMPANY and others, Appellants, vs. CITY
OF SUPERIOR and others, Respondents.

*May 22—June 17, 1914.*

*Municipal corporations: Public improvements: Paving: Acceptance:
Substantial performance: Compromise or adjustment with con-
tractor: Special assessments: Validity.*

1. Where the board of public works of a city at first refused to ac-
   cept a street pavement because not in compliance with the con-
   tract, but afterward, upon investigation and report by the city
   engineer, accepted it with a deduction of $2,400 to make good
   the difference in value between the pavement as laid and as
   contracted for, to which deduction the contractor agreed, this
   was a sufficient acceptance of the work upon which to base a
   special assessment against the abutting property.

2. The power vested in the board of public works to pass upon the
   question of performance of a contract for street paving neces-
   sarily gives to it authority to decide whether there has been
   substantial performance; and where there has been substantial
   performance acceptance of the work does not change the con-
   tract.

3. Adjustments with a contractor for public work upon the basis
   of substantial performance, allowances being made for depart-
   ures from literal compliance, are not compromises in the ordi-
   nary sense of the term, but are equitable and just and are
   binding where full benefits have been received under them.

4. The validity of an acceptance of street paving by the board of
   public works is not affected by the fact that it was first recom-
   mended by the common council.

5. *Chippewa B. Co. v. Durand,* 122 Wis. 85, and other cases relating
   to contracts made in violation of law, distinguished.

APPEAL from a judgment of the circuit court for Douglas
county: FRANK A. ROSS, Circuit Judge. *Affirmed.*

Fourteen parties, owners of real estate in the city of *Su-
perior,* brought separate actions to set aside special assessment
certificates and bonds issued by the city of *Superior* for the
improvement of Belknap street in said city. The actions
were dismissed as to three plaintiffs and consolidated as to the

balance.    There was a judgment for defendants and the fol-
lowing plaintiffs appealed: *Transfer Realty Company, Lake
Superior Hotel Company, William Simes* and *John P. Lyman,
Massachusetts Realty Company, Thomas Thompson, C. L.
Wohlwend, Henry P. Booth, Belknap Street Company, Otto
H. Hehne, Interstate Hotel Company,* and *Roy D. Lattin.*
The defendants are the city of *Superior, R. E. McKeague,*
city clerk of the city of *Superior,* P. McDonnell, *Bank of
Commerce,* and *Grace, Hudnall,* and *Fridley.*    The defendants
are the same in all cases except that defendants *Grace, Hud-
nall,* and *Fridley* are interested only in the case in which the
*Transfer Realty Company* was plaintiff before consolidation.
The complaints are the same in all cases except as to descrip-
tion of property and the fact that certificates were issued on
some property and special bonds on other property.

The principal question involved on the trial was whether
the work was done according to the contract.    The court
found among other things that a contract was entered into with
the defendant McDonnell for the improvement of the street
according to plans and specifications and that the work was
completed by him according to contract; that the work was
done under the supervision of the board of public works and
the city engineer; that when the work was started some
"bank" sand was used for filling under the concrete founda-
tion, and upon complaint being made by plaintiffs the use of
"bank" sand was discontinued and thereafter bay sand was
used throughout the work for such filling; that during the
execution of the work complaints were made as to cracks in
the concrete base and soft places in the concrete; also com-
plaint was made that the contractor was using in the concrete
less cement than was called for by the specifications; that the
city engineer insisted and still insists in good faith that the
concrete used fully met the requirements of the specifications;
that the complaints made were without foundation or the
matters complained of were without importance as affecting

the quality of the work involved; that except in the following particulars the work done complied with the specifications:

"1st. That sand used for filling under the concrete, except a small amount of 'bank' sand, was 'bay' sand, while the specifications call for 'clean' sand.

"2d. The filling sand was not all wet down before the concrete was laid thereon.

"3d. The asphalt used was not fluxed in *Superior*.

"4th. The asphalt used contained about fifty-five per cent. of bitumen.

"5th. The asphalt, when laid during cold weather, was in some places melted by the use of hot irons.

"6th. The wearing surface is of less thickness than specified."

As to the effect of the foregoing the court found:

"That the filling sand is intended to serve two purposes: (a) an easily molded, even surface, and (b) drainage. 'Bay' sand is considerably less expensive than 'clean' sand, but the evidence does not disclose that 'bay' sand or 'bank' sand do not serve the purposes mentioned as well as 'clean' sand would.

"That in view of the fact that the concrete was mixed and put upon the sand so wet as to be liquid, water in the concrete saturated the same as completely as though wet by a separate process and so far as the court can see met all practical requirements.

"That the city waived, as it had power to do, the requirements that the asphalt should be fluxed in *Superior*.

"The asphalt used was Trinidad asphalt, and although it did not analyze as high in bitumen as required by the specifications it was required to be used by the board of public works, and the contractor in using it only did so because so required, and that the same was as good as is used for paving purposes. It does not appear from the evidence as to whether or not asphalt of the test specified was commercially obtainable.

"No complaint is made that the work was not pressed with diligence. It was started immediately upon the signing of the contract. Before the work was completed the weather

became cold and asphalt does not work well in cold weather, because it cools before it can be put in place.   Hot irons were used to melt the asphalt and some spots were burned and left 'spongy.'   That such spots as there are will to any extent affect the life or usefulness of the pavement, or if so to what extent, does not appear from the evidence.   Moreover, this defect with all others are covered by the five-year bond furnished by the contractor when the contract was entered into. No other possible method for doing the work was suggested in the evidence, so that it was a question as to what course the city should pursue—whether to permit the work to be done or to stop the work and perhaps finish it the next season.

"The court therefore finds that the use of the hot irons in laying the asphalt does not in any practical sense affect the life, usefulness, or value of the pavement.

"There is little, if any, dispute as to the condition of the asphalt coating on the street as to its thickness, the nature of the surface, or the causes therefor.   The binder was in some places a trifle thicker than specified, and the wearing surface was, owing to the weight of the roller used, somewhat thinner in places than specified, not because of an insufficient quantity of asphalt having been used, but because the excessive weight of the roller used forced the soft asphalt down into and amalgamated it to some extent with the binder coat.

"The heavy roller was used apparently without objection from the city, probably because no other was available.   The evidence in the case does not tend to prove that the life, usefulness, or value of the pavement is affected by the condition mentioned, except to the extent that the asphalt covering is thinner than that specified, and the court finds that the life, usefulness, and value of the pavement is by reason of the failure mentioned affected only to that extent."

The court further found that the pavement was completed prior to December 2, 1911, and was a substantial and practical compliance with the contract except as to the thickness of the asphalt covering thereon; that the damage to the improvement and the owners of property assessed for the payment of the costs thereof resulting from all matters and things mentioned in the complaint or proved upon the trial was fully

covered by the $2,400 deducted from the contract price in the compromise made with the defendant McDonnell.

Among other things the court concluded as matter of law, that, as modified by the compromise mentioned in the findings of fact, the contract in question was substantially performed; that the action taken by the board of public works and the issuance by it of the certificates and bonds in question constituted an acceptance and approval of the work; that at the time the certificates and bonds in question were issued there had been "full performance" of the work and said certificates and bonds were legally issued and valid; that the compromise made with the contractor was and is valid; that the proofs fail to show that plaintiffs suffered any damage by reason of the matters complained of, and, except as to the plaintiff Orson Clarke Gillette, they are entitled to no relief.

Judgment was entered in accordance with the findings dismissing the plaintiffs' complaint except as to Gillette, from which judgment this appeal was taken.

For the appellants there was a brief by *Hanitch & Hartley,* and oral argument by *Louis Hanitch* and *C. J. Hartley.* They cited, among other authorities, *Schumm v. Seymour,* 24 N. J. Eq. 143; 1 Page & Jones, Taxation by Assessment, § 530; *Wilcox v. Porth,* 154 Wis. 422, 143 N. W. 165; *Superior v. Roemer,* 154 Wis. 345, 141 N. W. 250; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *McMillan v. Barber A. P. Co.* 151 Wis. 48, 138 N. W. 94; *Van Valkenburgh v. Milwaukee,* 157 Wis. 55, 143 N. W. 1052, 147 N. W. 67, *McCain v. Des Moines,* 128 Iowa, 331, 103 N. W. 979; *Fond du Lac v. Barber A. P. Co.* 156 Wis. 471, 146 N. W. 509; *McMillan v. Fond du Lac,* 139 Wis. 367, 120 N. W. 240.

*E. F. McCausland,* for the respondent *Bank of Commerce.*

For the respondents *City of Superior* and its officers there was a brief by *H. V. Gard* and *T. L. McIntosh,* and oral argument by *Mr. McIntosh.* They cited 1 Smith, Mun. Corp.

§§ 731–735; 4 McQuillin, Mun. Corp. §§ 1925–1954; 5 id. § 2479; 2 Dillon, Mun. Corp. (5th ed.) pp. 1255–1257; 4 id. p. 2628; *Lafebre v. Board of Ed.* 81 Wis. 660, 51 N. W. 952; *Washburn Co. v. Thompson,* 99 Wis. 585, 594, 75 N. W. 309; *Eirmann v. Milwaukee,* 142 Wis. 606, 126 N. W. 53; *Cook v. Racine,* 49 Wis. 243, 5 N. W. 352; *Wells v. Western P. & S. Co.* 96 Wis. 166, 70 N. W. 1071; *Hoile v. Bailey,* 58 Wis. 434, 17 N. W. 322; *Colby v. Franklin,* 15 Wis. 311; *Brodhead v. Milwaukee,* 19 Wis. 624; *Curran v. Holliston,* 130 Mass. 272; *Friend v. Gilbert,* 108 Mass. 480; *Stockdale v. School Dist.* 47 Mich. 226, 10 N. W. 349; 1 Page & Jones, Taxation by Assessment, §§ 527, 529, 531, 533; *Fass v. Seehawer,* 60 Wis. 525, 537, 19 N. W. 533; and other cases.

For the respondents *Grace, Hudnall & Fridley* there was a brief by *C. R. Fridley,* and oral argument by *George B. Hudnall.*

KERWIN, J. The contract for doing the paving in question was duly let to the defendant McDonnell according to plans and specifications and he entered upon the execution of the work, which was done under supervision of the board of public works and the engineer of the defendant city. During the progress of the work a dispute arose between the plaintiffs and the contractor, McDonnell, as to the meaning of the specifications and proper performance of the work under the contract. The plaintiffs employed an engineer to watch the work as it progressed, and complaints were made from time to time by the plaintiffs as to the character of the work performed and material used in the construction of the improvement.

The vital question upon this appeal and the one upon which the case turns is whether the paving was done according to contract or substantially so. The court below found that the complaints made regarding the execution of the con-

tract were without foundation, and that the work had been done in accordance with the contract and specifications except in the particulars set out in the statement of facts.

Counsel for appellants attack the findings as not supported by the evidence and also insist that the findings do not support the judgment. We shall not extend this opinion by a discussion of the evidence. It is sufficient to say that after a careful examination of it we are convinced that the findings are well supported.

No complaint is made that the contract was not properly let according to law to the lowest bidder. The court below in its findings points out the different particulars in which the contractor failed to literally comply with the specifications, and gives its conclusions that the specifications and contract under which the work was done were substantially complied with and that the amount deducted from the contract price, namely, $2,400, fully covered any defective performance or failure to comply literally with the contract.

Stress is placed by counsel for appellants upon the fact that the board of public works first refused to approve the work because not in compliance with the contract, but afterwards did so upon investigation and recommendation from the common council of defendant city. On this point the court below found: That after refusal to accept, the board of public works caused the city engineer to investigate and examine the pavement and to compute and determine what deductions from the contract price should be made by reason of noncompliance with the contract and specifications, and the city engineer pursuant thereto computed and reported that a deduction of $2,400 would fully cover the difference between the value of the pavement as laid and its value had it been in strict compliance with the contract in all respects; that on January 2, 1912, the board of public works referred the matter to the common council for instructions; that a committee of the common council was appointed, which committee

on January 16, 1912, reported recommending acceptance of the work, deducting $2,400 from the contract price; that on January 16, 1912, the common council of defendant city adopted a resolution authorizing the board of public works to accept the work under the contract upon the contractor filing with the city clerk an acceptance of the proposed settlement; that on January 17, 1912, the contractor filed an acceptance of the proposed settlement; that on January 17, 1912, said board of public works accepted the improvement for the sum of $54,248.26; that thereafter certificates and bonds were by said board of public works duly issued for special assessments against the property of plaintiffs, the amounts so assessed having been reduced proportionately by the reduction from the contract price, and said bonds were on January 19, 1912, delivered to the defendant contractor.

The foregoing findings are attacked by counsel for appellants on the ground that they do not show an acceptance by the board of public works. We think the action of the board clearly shows an acceptance and approval, and we know of no reason why it could not accept after proper adjustment of the claim had been made showing substantial compliance with the contract, even if it had no power before.

The board of public works under the charter was charged with the duty of passing upon the work and approving or disapproving it. It is clear from the record before us that the board and all officers of defendant city acted in good faith in the matter and made diligent effort to ascertain what it was in duty bound to do regarding the contract in question. And it is plain that in its efforts to do its duty between all parties it first decided not to accept, and afterwards, upon more thorough investigation and agreement for reduction of the claim, decided to and did accept the reduced claim as before stated.

It is argued by counsel for appellants that the board of public works had no power to change the contract. As a general proposition this may be conceded, but the board has power to pass upon the question of performance of the contract and

whether it had been in fact performed.  This power vests in
the board, necessarily, the authority to decide whether there
has been substantial performance, because substantial per-
formance is performance.  4 Dillon, Mun. Corp. (5th ed.)
p. 2628; 1 Page & Jones, Taxation by Assessment, §§ 527,
531.  Substantial performance of a contract such as the one
under consideration is substantial justice, where no damage
is suffered by failure to literally perform.  *Lawton v. Ra-
cine,* 137 Wis. 593, 119 N. W. 331; *Beaser v. Barber A. P.
Co.* 120 Wis. 599, 98 N. W. 525; *Lafebre v. Board of Ed.* 81
Wis. 660, 51 N. W. 952; *Wells v. Western P. & S. Co.* 96
Wis. 116, 70 N. W. 1071; *Cook v. Racine,* 49 Wis. 243, 5
N. W. 352; *Colby v. Franklin,* 15 Wis. 311; 1 Page & Jones,
Taxation by Assessment, § 529; *In re Apple* (Iowa) 142 N.
W. 1021.

Considerable is said by counsel for appellants on the point
that the board had no power to compromise.  We need not
pass upon the question whether compromise, except as a basis
for substantial performance, is within the power of the board,
because the adjustment was not a compromise of a disputed
claim in the ordinary sense of that term.  It was more in the
nature of acceptance of the work on the terms of substantial
performance.  Such adjustments are equitable and just, and
are held binding by the courts where full benefits have been
received under them.  2 Dillon, Mun. Corp. (5th ed.)
pp. 1255–1257.

Some claim is made by appellants that it appears that the
board of public works accepted the work because ordered to
do so by resolution of the common council and that the com-
mon council had no power to so order.  The board of public
works, when it accepted, did so as a board by virtue of the
power vested in it under the law, and whether the common
council by resolution or otherwise recommended such action
is wholly immaterial.  The board approves the improvement
by force of the statute.

Appellants rely upon *Chippewa B. Co. v. Durand,* 122

Wis. 85, 99 N. W. 603; *Wells v. Burnham*, 20 Wis. 112; and *Cawker v. Central B. P. Co.* 140 Wis. 25, 121 N. W. 888. In these cases it will be seen that no jurisdiction was ever obtained of the subject matter, because the contracts were in direct violation of law. In *Wells v. Burnham, supra,* in referring to the fact that the contract was let in violation of the provision of the city charter, the court said: "A violation of that provision must always, *prima facie* at least, affect the substantial justice of any tax in a case similar to this." In *Chippewa B. Co. v. Durand, supra,* the basis of the decision is that the contract was not let in the manner prescribed by the city charter, hence no obligation was imposed upon the city to pay for the work. Likewise in *Cawker v. Central B. P. Co., supra,* the contract was held void because of failure to comply with charter provisions.

In the view we take of the case other questions discussed do not require treatment. We are satisfied that the judgment below is right and should be affirmed.

*By the Court.*—The judgment is affirmed.