CITY OF WAUWATOSA, Appellant, vs. JACOBUS & WINDING CONCRETE CONSTRUCTION COMPANY and others, Respondents.

*December 7, 1936—January 12, 1937.*

*Roy R. Stauff,* city attorney, for the appellant.

For the respondent Jacobus & Winding Concrete Construction Company there was a brief by *Perry & Perry* of Milwaukee, and oral argument by *Charles B. Perry.*

For the respondents D. C. Jacobus, Garrett L. Jacobus, and Delwin C. Jacobus there was a brief by *Bender, Trump & McIntyre,* attorneys, and *Walter H. Bender* and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Mr. Bender* and *Mr. Godfrey.*

NELSON, J. All of the testimony having been adduced by the plaintiff, there is little, if any, dispute as to the facts. So many of the facts as are necessary to an understanding of the opinion will be summarized. The plaintiff is a municipal corporation. Jacobus & Winding Concrete Construction Company, hereafter called the "company," is a Wisconsin corporation engaged in the general construction business. On or about August 3, 1928, the city and the company entered into a contract whereby the company agreed to grade and pave with re-enforced concrete Hawthorne avenue from Greenfield avenue to the west limits of the city, at the agreed

price of seventy cents per cubic yard for excavating, seventy cents per cubic yard for filling, and one dollar and seventy-six cents per square yard for paving, including integral curb and gutter, all in accordance with plans and specifications theretofore approved by the common council of the city. C. C. Jacobus and D. C. Jacobus signed the contract as sureties. The contract and specifications contained many provisions clearly indicating that the city engineer and board of public works should have complete control and supervision of the work. Some of such provisions are as follows:

"No work shall be done under this contract except in the presence of the city engineer or his representative. . . .

"The city engineer is authorized whenever he deems it proper or necessary in the execution of the work to make any alteration. . . .

"The contractor shall perform all the work herein specified under the direction and superintendence of the city engineer and to his entire satisfaction, approval and acceptance, and to that of the board of public works.

"All material to be incorporated in the work, all labor performed, and all appliances, tools and methods used shall be subject to the inspection and approval or rejection of the city engineer.

"The city engineer shall decide all questions relating to measurements, the materials used, the character of the work performed, and as to whether the rate of progress is such as to comply with these specifications.

"If any authorized agent of the city engineer shall point out to the contractor any neglect or disregard of the specifications, such defect shall at once be remedied and further defective work shall at once be discontinued; but the right of final acceptance or condemnation of the work will not be waived by any reason thereof nor by any other act of the city of Wauwatosa by its officers or agents. . . .

"No concrete shall be deposited until the subgrade is checked and accepted by the city engineer."

On October 3, 1928, the company commenced work under the contract and completed the work seven days thereafter.

During the progress of the work, either the city engineer or his assistant or representative, the inspector on the job, inspected the work. The work was all performed in the open, and any deficiency in the thickness of the concrete was obviously easily discoverable by reasonable attention to the duties of inspection. The company did not conceal, or attempt in any manner to conceal, from the plaintiff, its officers, or representatives, the manner or method of doing the work or the quantity or quality of the material used. On November 2, 1928, the city engineer certified to the board of public works that the company had completed the work "all in accordance with the plans and specifications," but recommended that the sum of $300 be withheld from the amount due the company to insure the trimming up of the grade of the sidewalk portions of the street and cleaning the manholes. The board of public works thereafter on the same day adopted a resolution which provided "that the work of grading and paving" this street "be and the same hereby is accepted," and provided for the withholding of the $300 as recommended by the city engineer. On November 6th, following, the common council adopted a resolution providing for the issuance of special improvement certificates and for the payment of the city's share of the contract price. The resolution recited that the "grading and paving has been done pursuant to directions of the common council . . . and in accordance with the terms of written contracts heretofore entered into."

The concrete was laid in two slabs, each of which ran from the curb line to the center of the street. About two years after the pavement was accepted the slab on one side of the street settled slightly, and the city deemed it necessary to repair the unevenness by spreading a thin layer of asphalt at the places where the unevenness existed. The city thereafter caused cores to be cut from the pavement, most of which revealed that the pavement at the places from which the cores

were cut was not as thick as the contract provided. At the time of the trial a number of other cores were cut out from other points in the street. Most of these revealed a shortage in the thickness of the pavement.

Prior to the laying of the concrete, the street was graded in accordance with the grades furnished by the city engineer or his assistants.

The court specifically found as follows:

"8. That the pavement as laid has been in constant use since the completion of said contract and that at the present time is in apparent good condition. That there is no evidence that it is not adequate for the use intended. That there is no evidence from which it can be determined that the pavement as constructed does not substantially comply with the contract between said parties as to thickness thereof. That the evidence fails to show that the departure from the specified thickness of the concrete were of such nature or extent as to imply dishonesty or fraud."

The court concluded that by its acceptance of the work as substantially performed under the terms of the contract, and the payment of the amounts due thereunder, the city waived any claim for damages that it might have had because of a departure from the terms of said contract, and is estopped from asserting any claim for damage against the defendant.

The city assigns numerous errors and makes numerous contentions, all of which the court has carefully considered, but which in our view need not be specifically discussed considering the disposition which must, in our opinion, be made of this case.

The plaintiff seeks to recover a proportion of the amount paid the company by it and the property owners based on the shortage in the thickness of the pavement, which shortage it asserts is evidenced by the cores cut from the street. The court below was of the opinion that the plaintiff failed to prove any damages, it, apparently, not being greatly impressed by the testimony of the engineers who computed the

damages upon the basis of an engineering formula "that the strength [and therefore the value] of a beam is proportional to the square of the diameter."

In our view this case is ruled by a principle of law which renders it unnecessary for us to consider many of the errors assigned by the plaintiff, none of which relate to that principle of law.

The judgment was obviously grounded upon the conclusion of the trial court that, since the work as it progressed was open to constant inspection by those who were given the broadest powers of supervision and inspection, and, since there was no concealment or attempt at concealment by the company, and no suggestion of fraud or collusion, that the acceptance of the work, as performed, by the city engineer, the board of public works, and the common council, precludes the city, on principles of estoppel, waiver, or simple justice, from now asserting that the company did not substantially perform its contract.

Whether a municipality in a situation like this, after fully accepting the work, may recover part of what it has paid upon discovery that the work in some respects falls short of what the contractor agreed to do, apparently has not been precisely passed upon by this court, although cases quite analogous have been considerately dealt with and the applicable rule stated, to which cases reference will be made later.

In a situation like the present, the applicable rule is well stated in 19 R. C. L. p. 1076, § 361:

"It is usually provided in contracts for the construction of public works entered into by municipal corporations that the work shall be done under the supervision of the city engineer and that no payment shall be made except upon his certificate that the work has been properly performed, and it is well settled that the approval of the work by the city engineer under whose supervision a contract for public improvement is to be performed will, in the absence of fraud or concealment

which prevents a discovery of imperfections, estop the municipality from contesting the contractor's right to the contract price because of failure to perform the work according to the specifications, so far as defects are concerned which were discoverable by reasonable attention to the duties of inspection. . . ."

The rule there stated is well supported by the following well-considered cases in which the courts have been called upon to deal with similar situations. *Omaha v. Hammond,* 94 U. S. 98; *City Street Improvement Co. v. Marysville,* 155 Cal. 419, 101 Pac. 308, 23 L. R. A. (N. S.) 317; *McGuire v. Rapid City,* 6 Dak. 346, 43 N. W. 706, 5 L. R. A. 752; *In re Apple,* 161 Iowa, 314, 142 N. W. 1021.

See also numerous cases cited in 23 L. R. A. (N. S.), commencing at page 317, and 5 McQuillin, Mun. Corp. p. 398, § 2085, where it is said:

"Stated in other words, in the absence of fraud, mistake, bad faith, arbitrariness, caprice or other like invalidating circumstances, it is generally held that the report of the engineer or architect, or other person in charge is conclusive upon the parties that the improvements were made and completed according to the terms of the contract."

Some of the cases hold that the doctrine of estoppel precludes a municipality from recovering in such a situation, others hold that the doctrine of waiver should be applied, and still others hold that it would be unjust for a municipality, having full powers of supervision and inspection during the progress of municipal work, to stand by without objection or criticism while the work progresses and then subsequently, after the acceptance of the work, compel the work to be done over at great loss or expense to the contractor.

Many cases may be found in the books in which property owners who were dissatisfied with a municipal improvement because defectively or improperly done have brought actions

to set aside special assessments made against them or in which property owners have sought to resist or to be relieved from such assessments. See annotation in 79 A. L. R. 1107, where the rule applicable to such situations is thus stated:

"The acceptance of a street improvement by a municipality, in the absence of fraud, and where there is a substantial compliance with the contract and specifications thereof, is binding on the property owner."

The reasoning upon which the decisions are grounded may be summarized thus: The contract and specifications were prepared by the city; the contract and specifications gave to some officer of the city, usually the engineer, full, complete control of the work, the manner of its performance and the determination of whether it complies with the contract and specifications; his decision, in the absence of fraud, fraudulent agreement, or collusion, is made final and binding upon both parties; he supervised and inspected the work as it progressed; the work was carried out and completed to his entire satisfaction and was accepted by him as either fully or substantially complying with the contract; the board of public works and the common council relied upon his opinion and certification, and, having accepted the work and paid the contract price thereof, the city is thereafter, in the absence of a showing of fraud or collusion, precluded from asserting that the work was not performed in accordance with the contract. In the early case of *Hasbrouck v. Milwaukee*, 17 Wis. * 266, * 281, it was stated:

"Upon all matters arising under the contract which the engineer had power to decide, there could be no disagreement. His decision upon those subjects was absolutely final and conclusive upon the parties."

The principle that, when parties agree to rely upon the judgment and skill of an architect or engineer in determining the value of work and materials under municipal con-

tracts, they must abide by the estimate of the umpire chosen, or impeach it upon sufficient legal grounds, was adhered to and acknowledged to be correct in principle.

The principle was more fully stated in *Laycock v. Moon,* 97 Wis. 59, 72 N. W. 372; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *Ashland Lime, Salt & Cement Co. v. Shores,* 105 Wis. 122, 81 N. W. 136. These cases enunciated principles applicable to private building contracts. We perceive, however, no reason why those same principles should not apply to municipal contracts.

In *Park v. Milwaukee,* 180 Wis. 278, 284, 192 N. W. 1012, it was said:

"The decision of the commissioner of public works, pursuant to this power, is final unless impeached for fraud, accident, or mistake; and 'the mistake here referred to is not a mere error in judgment as to the quality of the work or the responsibility for defects therein, upon conflicting evidence, which may be overthrown by a preponderance of evidence before the jury, but it means unintentional misapprehension or ignorance of some material fact, and it must be clearly established by the evidence, and so gross and palpable that it is equivalent in its effects to dishonest, fraudulent, or merely arbitrary action.' *Keachie v. Starkweather D. Dist.* 168 Wis. 298, 304, 170 N. W. 236, and cases there cited."

In *Keachie v. Starkweather D. Dist.* 168 Wis. 298, 303, 170 N. W. 236, after referring to a provision in a contract relating to the excavation of certain ditches which provided that, in the interpretation of these specifications and the contract and upon all questions concerning the execution of the work, the decision of the commissioners shall be final, this court said:

"This provision differs from the ordinary provision of like tenor found in nearly every building or construction contract only in the personnel of the arbitrators or umpires appointed to decide upon the contract, specifications, and work. If the word 'architect' be substituted for the word 'commissioners,'

we will have here a provision that is usual and customary in construction contracts. The effect of a provision of this kind is not doubtful. It is well settled in the law. It is not void because it ousts the court of jurisdiction, as earnestly contended by respondents. This court, in *Hudson v. McCartney,* 33 Wis. 331, gave full scope and effect to a provision of this nature in no uncertain terms, and the language of that case has since frequently met with approval. *Oakwood Retreat Asso. v. Rathborne,* 65 Wis. 177, 26 N. W. 742; *Bentley v. Davidson,* 74 Wis. 420, 43 N. W. 139; *Wendt v. Vogel,* 87 Wis. 462, 58 N. W. 764; *Chapman v. Rockford Ins. Co.* 89 Wis. 572, 62 N. W. 422. It is firmly established that, where matters are thus left to the decision of an architect, his decision is final unless impeached for fraud, accident, or mistake; and 'the mistake here referred to is not a mere error in judgment as to the quality of the work or the responsibility for defects therein, upon conflicting evidence, which may be overthrown by a preponderance of evidence before the jury, but it means unintentional misapprehension or ignorance of some material fact, and it must be clearly established by the evidence, and so gross and palpable that it is equivalent in its effects to dishonest, fraudulent, or merely arbitrary action.' *Wendt v. Vogel,* 87 Wis. 462, 466, 58 N. W. 764."

See also *Transfer Realty Co. v. Superior,* 157 Wis. 587, at pp. 594, 595, 147 N. W. 1051.

It is our conclusion, under the undisputed facts of this case that, in the absence of a showing of fraud on the part of the contractor or the city engineer and his assistants or collusion between the contractor and the engineer or the board of public works, it should be held that the city is precluded from asserting any claim against the contractor or his sureties based upon an assertion, even if substantially proven, that the concrete slabs were not as thick as they should have been had the contract been meticulously complied with. The concrete was laid upon grades furnished by the city engineer. The work was under the supervision of the

city engineer and was from time to time inspected by either him or his assistants or representatives. That the concrete was not as thick as it should have been in certain places was at all times easily discoverable, and could have been promptly remedied with little additional effort or expense. It is now too late to complain, after the work has been accepted, has been used for many years, has been found to be serviceable, and to fulfil the purposes for which it was constructed, and to be without defects except as to the settling. In our opinion the trial court was right in concluding that the acceptance of the work by the city as substantially performed, effectively waived any claim for damages, and the city is estopped from asserting any claim for damages against the defendant or its sureties.

*By the Court.*—Judgment affirmed.