E. H. MARHOEFER, JR., CO., a foreign corporation, Plaintiff,

v.

MOUNT SINAI, INC., Defendant.

No. 58-C-281.

United States District Court
E. D. Wisconsin.

Jan. 27, 1961.

---

4. Such as the words involved in the Chenery case—"fair and equitable" or "detrimental to the interests of investors."

Merton H. Giffin, Milwaukee, Wis., for plaintiff, Giffin & Simarski and Michael J. Peltin, Milwaukee, Wis., of counsel.

Rosenbaum & Rosenbaum, Milwaukee, Wis., for defendant, Ralph K. Rosenbaum, Jr., Milwaukee, Wis., of counsel.

GRUBB, District Judge.

This case is before the court on defendant's motion for summary judgment, requesting dismissal of the complaint.

For its first cause of action plaintiff, E. H. Marhoefer, Jr., Co., alleges that it entered into a contract with defendant, Mount Sinai, Inc., on December 15, 1954, whereby it agreed to act as a general contractor in the construction of an addition to the existing building of defendant's hospital, and that plaintiff performed the services and supplied the materials required of it and completed said contract. It further alleges that excessive revisions and additions to said basic contract, as well as defendant's failure to provide labor and materials and work areas as scheduled as agreed to by the terms of the contract, resulted in an unnecessary extension of the time of construction and caused damages to plaintiff in the amount of $138,304.47. In addition, plaintiff claims there remains due and owing the sum of $7,850.93 on the original contract price. Plaintiff allegedly has made due demand for said sums in the total amount of $146,155.40, which demand has been refused by defendant.

Plaintiff further sets forth in its first cause of action that the original amount of the contract price was $1,449,000; that certain additions to the contract amounted to $253,517, leaving a net contract price of $1,702,517 less deductions in the amount of $6,912 for a net total of $1,695,605; and that defendant has paid plaintiff the sum of $1,687,754.-07.

For its second and alternative cause of action, plaintiff alleges that it rendered certain labor and furnished materials for and on behalf of defendant in the construction of an addition to defendant's hospital building at the instance of the defendant and beginning on or about December 15, 1954. The reasonable value of said labor and material is alleged to be $1,833,909,47, of which plaintiff has been paid the sum of $1,687,754.07. Plaintiff further alleges that it has made demand for the balance of $146,155.40, due and owing, and that defendant has refused to pay said amount.

In its answer defendant denies the alleged breach and the claim of the alternative cause of action. It asserts as a special defense certain paragraphs of the contract between plaintiff and defendant providing that the amount of loss or damage to either party shall be fixed by the architect and that said architect had previously determined that plaintiff had suffered no loss or damage under the contract. Defendant further counterclaims for damages for plaintiff's alleged failure to maintain the bed complement of the hospital during the construction period in breach of the contract and for an amount allegedly due for electricity furnished the plaintiff. The claims of said counterclaim are denied by plaintiff.

For purposes of its motion for summary judgment, defendant offers a copy of the contract between the parties and an affidavit by the President of A. Epstein and Sons, Inc., the architects and engineers employed by defendant to design and erect the construction of the addition to defendant's hospital and who prepared the contract. This affiant states that plaintiff made demand in writing for additional compensation on March 7, 1957, and on June 21, 1957, with supporting statements for its demand, and that affiant on July 11, 1957, wrote to plaintiff denying its claim. A copy of said letter of notification is offered as an exhibit and reads as follows (formal parts omitted):

"We have reviewed the data contained in your letter of June 21, 1957, and the accompanying exhibits.

"Based upon the information contained therein we find no justification for your claim and therefore, in accordance with the terms of the contract, we hereby advise that your request for additional compensation is denied."

Defendant further offers certain questions and answers of the deposition of E. H. Marhoefer, Jr., President and Treasurer of plaintiff, wherein said deponent states that he signed the contract on behalf of his company, that he was acquainted with and had read the contract, and that his formal demand for additional compensation was formally refused by the architect. Deponent identified the letter of July 11, 1957, from Epstein to plaintiff and recalled having received the original thereof.

In opposition to the motion for summary judgment, plaintiff offers portions of the deposition of Raymond F. Epstein wherein said deponent testified that there was some difficulty with the hospital in making areas available which could have delayed progress of the job and that said deponent's company expressed its concern with the slowing down of vacating the hospital to the Hospital Board which gave as reason for the delay the difficulty in accommodating itself to changes, and who recalled that there were in the neighborhood of 350 change orders in respect to the contract. Plaintiff further offers defendant's answers to plaintiff's interrogatories, stating that the contract between plaintiff and defendant bears the ratio of 58 per cent to the total of all construction contracts entered into by the defendant for this project, and that A. Epstein and Sons, Inc., was the agent of defendant who was responsible for making changes and revisions in the basic contract.

The contract in question contains the following provisions:

"Article III. The owner shall have the right to make any alterations in the work under this contract, but only upon the written order of the Architect. The value of the work added or omitted shall be computed by the Architect and the amount so ascertained shall be added to or deducted from the contract price. * * * In case of dissent from the Architect's award, by either party hereto, the valuation of the work added or omitted shall be referred to an arbitrator as provided in article IX.

\* \* \* \* \* \*

"Article VII. Should the Contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the Owner or the Architect, or of any other contractor employed by the Owner upon the work, * * * then the time herein fixed for the completion of the work shall be extended * * *; but no such allowance shall be made unless a claim therefor is presented in writing to the Architect within twenty-four hours of the occurrence of such delay. The duration of such extension shall be certified to by the Architect.

"Article VIII. The Owner agrees to provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the Contractor, agrees that he will reimburse the Contractor for such loss; * * *. The amount of such loss or damage to either party hereto shall, in every case, be fixed and determined by the Architect.

"Article IX. Any controversy or dispute arising under this contract shall be settled by the Architect, whose decision shall be final and binding upon the parties hereto, except that in the case of a dispute as to the value of extra work, or of work omitted, or of the amount of damages referred to in Article V, either party may appeal from the Architect's decision to arbitration, * * *."

It is the opinion of the court that the pleadings, motion papers, documents, and exhibits offered in respect thereto show that defendant is entitled to summary judgment in respect to plaintiff's claim for damages in the amount of $138,-304.47 as asserted in the first cause of action, and that defendant is further entitled to summary judgment dismissing the second and alternative cause of action of the complaint.

■■ Agreements to submit specific determinations of controversies and disputes arising under a contract to a third party chosen by the contracting parties are valid in Wisconsin. The decision of the third party as to matters entrusted to him, like the award of an arbitrator, is final and binding upon the parties unless the decision is impeached for fraud, accident, or gross mistake of such a nature that fraud may be inferred. Keachie v. Starkweather Drainage Dist., 1919, 168 Wis. 298, 170 N.W. 236; City of Wauwatosa v. Jacobus & Winding Concrete Const. Co., 1937, 223 Wis. 401, 271 N.W. 21, 110 A.L.R. 131; United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256.

■ The pleadings in this action and the proof offered on the motion for summary judgment do not raise an issue as to the validity of the architect's determination in rejecting plaintiff's claim for losses or damages. Parties competent to enter into this construction contract are competent to agree that the architect, even though he is the agent of one of the contracting parties, shall determine the question of claimed losses and damages. They are also competent to agree that said designated person's determination shall be final and binding on them. See United States v. Moorman, supra, 338 U.S. at page 461, 70 S.Ct. at page 290; Keachie v. Starkweather Drainage Dist., supra, 168 Wis. at page 305, 170 N.W. at page 238.

■ The determination of plaintiff's claim is within the authority conferred upon the architect by the plain language of Article VIII of the contract. It provides that the amount of loss or damage "shall, in every case, be fixed and determined by the Architect." The evidence that this determination was based on review of information furnished by plaintiff as stated in the letter of July 11, 1957, stands uncontroverted.

Disagreement as to the amount of loss or damage sustained is a controversy or dispute arising under the contract. Article IX of this agreement provides that the architect's decision thereon shall be final and binding upon the parties. There is no showing that plaintiff requested arbitration or that the hospital denied such a request.

■ The fact that 350 changes were made in a construction contract of these dimensions, and that delay was caused thereby to the contractor, does not suffice to show that the determination may be impeached for being based on gross mistake sufficient to give rise to an implication of fraud.

■ Before applying the severe remedy of summary judgment to which defendant is entitled in part on its showing on this motion, the court takes judicial notice of other documents filed in this action but not offered for purposes of the motion in an endeavor to evaluate all evidence available on the issue. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.; 6 Moore's Federal Practice § 56.11(9), page 2086; Gilliam v. United States, 1958, 103 U.S.App.D.C. 181, 257 F.2d 185 (first case), certiorari denied 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680. Raymond F. Epstein stated in his deposition that 350 changes in a project of the proportions here involved were not unusual or rare in number. The court further notes Epstein's opinion that the number of changes made amount to about one fifth of the total construction project undertaken by plaintiff when estimated in dollar value. It appears from the pleadings and the papers before the court that while there were these changes and additions, there was also an

allowance by the architect of a substantial addition to the original contract price in the approximate amount of $253,517.

A showing that changes have been made at the instance of the owner or architect and that delay has been caused thereby in the completion of the construction project does not entitle plaintiff to maintain an action on this contract which provides that the owner shall have the right to make *any* alterations in the work under this contract, and that losses resulting from delay caused by the owner's act shall be determined by the architect. Further, a mere showing that the judgment of the architect was erroneous—and such a showing has not been made on this motion—does not permit plaintiff to maintain the action for breach of contract. In the absence of a showing of fraud, partiality, or gross mistake to impeach the architect's decision, this determination is conclusive upon plaintiff and constitutes a bar to an action for damages sustained due to delays and changes in the contract occasioned by defendant. Anticipatory provisions for settlements of disputes are favored and have the approval of the courts. United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256.

It appears from the allegations of plaintiff's second cause of action that this relates to the work performed by plaintiff under the contract alleged in its first cause of action in the construction of an addition to defendant's hospital. In this second and alternative claim, plaintiff alleges an amount of total compensation earned which is made up of the agreed amended contract price, plus the amount allegedly still owing thereon, plus the amount claimed as damages resulting from the breach thereof, or a total of $1,833,909.47. These allegations indicate that plaintiff treats the labor and materials furnished in the construction of an addition to defendant's hospital as one undertaking. They do not support the view that there was a separate contract implied in fact or in law relating to the items constituting the loss or damages as claimed in its first cause of action.

On the hearing of the motion, plaintiff's counsel stated that delays and insufficient work done under contracts directly between defendant and other contractors which made up 48 per cent of the construction caused additional work over and above the contract between plaintiff and defendant. Said counsel conceded, however, that both causes of action related to the same project and that the extras for which it seeks compensation arose out of the work done pursuant to the contract and might properly be classified as extras under the contract.

On this motion, plaintiff has failed to show that services, labor, and material furnished by it in the construction of an addition to defendant's hospital were otherwise rendered than in pursuance of the express written contract entered into between plaintiff and defendant, which contract was made a part of the record for purposes of this motion. Plaintiff has made no showing to impeach the validity of this contract. Where an express contract is proven, there can be no recovery on implied contract for the reasonable value of labor and materials furnished in performance of said contract. The terms of the written contract govern the rights and obligations of the parties. Estate of Andrus, 1922, 178 Wis. 358, 190 N.W. 83; Roszina v. Nemeth, 1947, 251 Wis. 62, 27 N.W.2d 886, 28 N.W.2d 885. The circumstances of this case do not support a theory of rescission of the contract either by mutual consent of the parties or by an election to rescind prior to complete performance by one of the parties because of substantial breach or prevention of performance by the other party thereto.

In accordance with Rule 56(d), Federal Rules of Civil Procedure, the court finds from the record on this motion that the following material facts exist without substantial controversy:

1. Plaintiff and defendant entered into a valid contract, pursuant to which plaintiff fully performed its undertaking in respect to the construction of an addition to defendant's hospital.

2. In accordance with the provisions of said contract, plaintiff submitted a claim for alleged loss or damage, resulting from delay caused by defendant, to the architect who, under the contract, was the person designated to determine the question of loss or damage to either party.

3. After review and consideration of the information furnished by plaintiff in support of its claim, the architect denied said claim.

4. There is no genuine issue as to the validity of the decision which the architect rendered on plaintiff's claim.

5. Under the terms of the contract the decision of the architect on any dispute or controversy arising thereunder shall be conclusive upon the parties.

6. There is no showing that plaintiff requested arbitration of this question or that defendant refused such a request.

The court further finds that controversy exists as to plaintiff's claim in its first cause of action that defendant owes plaintiff $7,850.93 as a balance due and owing on the contract price.

Questions presented by defendant's counterclaim were not before the court on this motion for summary judgment.

No genuine issue remains as to the material fact of the validity of the architect's determination, or as to the validity of the contract between these parties. In light of the provisions of said agreement, defendant is entitled to judgment as a matter of law in respect to plaintiff's claim for loss or damages, allegedly due to delay caused by defendant, in the amount of $138,304.47 as alleged as part of plaintiff's first cause of action. Defendant is further entitled to summary judgment in respect to plaintiff's second cause of action in its entirety.

Settle order.