Richard O. BECKER and Jon O. Becker,
Plaintiffs-Respondents,

v.

CRISPELL-SNYDER, INC. and Continental Casualty
Company, Defendants-Appellants.†

Court of Appeals

*No. 2008AP53. Submitted on briefs September 29, 2008.
—Decided January 14, 2009.*

2009 WI App 24

(Also reported in 763 N.W.2d 192.)

† Petition to review denied 4/14/09.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *W. Wayne Siesennop* and *Scott J. Thomsen* of *Siesennop & Sullivan* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Timothy S. Knurr* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.* of Racine.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. This case presents the flip side of *Sussex Tool & Supply, Inc. v. Mainline Sewer and Water, Inc.*, 231 Wis. 2d 404, 605 N.W.2d 620 (Ct. App. 1999). *Sussex Tool* held that the complainant's business establishment was not a third-party beneficiary to a road construction contract since it was only incidentally located near the project like every other business on that street. *Id.* at 409, 416. But here, the town of Somers recruited Richard and Jon Becker to build a subdivision in the town and the oral contract between the town and the engineering firm, Crispell-Snyder, was made for the express purpose of furthering this subdivision development. Further, as a condition of development, the Beckers were obliged to pay Crispell-Snyder's bills, creating a creditor-debtor relationship. These facts gave the Beckers their third-party beneficiary status. The Beckers thus had standing to sue on the

contract between the town and Crispell-Snyder. We therefore affirm the judgment of the circuit court made upon a jury award of damages to the Beckers after hearing credible evidence that Crispell-Snyder billed the Beckers for unreasonable and unnecessary work.

¶ 2.  Before we set forth the facts, it is important to note that while many of the facts we are about to relate were disputed, our review is limited to a search for any credible evidence that will support the jury verdict. *Heikkinen v. United Servs. Auto. Ass'n*, 2006 WI App 207, ¶ 42, 296 Wis. 2d 438, 724 N.W.2d 243, *aff'd*, 2007 WI 124, 305 Wis. 2d 68, 739 N.W.2d 489. Thus, our recap of the facts is in a light most favorable to the jury verdict. *See Roach v. Keane*, 73 Wis. 2d 524, 536, 243 N.W.2d 508 (1976).

¶ 3.  This dispute began in 2000 when the Beckers were considering whether to purchase land in the town of Somers to develop a residential subdivision called "Somers Estates." The Beckers purchased the property after William Morris, the town's administrator, assured them that developing the parcel would be "very profitable." After purchasing the property, the Beckers hired an engineering firm to do the plat survey, staking, inspections and oversight with a bid of approximately $86,000.

¶ 4.  In 2001, after having made a substantial investment in the subdivision, the town forced the Beckers to change engineers, telling them that they had to use Crispell-Snyder—the town's engineering firm for thirty years—or construction was going to be shut down and the subdivision was not going to happen. The Beckers objected, but Morris assured them that Crispell-Snyder's fees would be within 1 to 2% of the Beckers' choice of engineers and that the extra 25% in their line of credit would not actually be used. Based on

these assurances, the Beckers signed the developer's agreement with the town, making it so.

¶ 5.   After the Beckers signed the agreement, construction was allowed to continue. Crispell-Snyder billed the town for its time spent on the Beckers' development, pursuant to its oral public works contract with the town. All the while, the agreement made the Beckers liable for Crispell-Snyder's invoices.[1] The town simply withdrew the money from the Beckers' line of credit. It approved every invoice, relying on Crispell-Snyder's good faith to bill for only reasonable and necessary services. The Beckers voiced their objection to Morris, but he never responded. The Beckers did not see the invoices or have a chance to object to their payment until after the fact.

¶ 6.   Crispell-Snyder's bills were high enough that the town ultimately withdrew all of the Beckers' line of credit and sent them a bill for $177,392.22. The town also billed the Beckers about $87,000 to settle a lawsuit involving the excavation contractor. The excavation contractor had claimed damages because it had to do more work than it had bid on. The jury determined that Crispell-Snyder's engineering negligence led to this mistake. The evidence showed that Crispell-Snyder put into the specifications an incorrect quantity of earth to be removed.

¶ 7.   The Beckers sued Crispell-Snyder, claiming they were third-party beneficiaries to the town's contract with Crispell-Snyder. Crispell-Snyder moved for summary judgment asserting that, as a firm of engi-

---

[1] The town was supposed to split Crispell-Snyder's invoices 50/50 between the Beckers and a neighboring developer. However, the town ended up splitting the invoices 74/26 with the Beckers paying 74% and the neighboring developer paying 26%. The Beckers have not pursued this issue through an appeal.

neering professionals, it was immune from suit. It also invoked the *Sussex Tool* case and claimed that the Beckers, like the complainant in *Sussex Tool*, could not claim third-party beneficiary status to its contract with the town. The circuit court ruled that Crispell-Snyder waived its immunity claim by not raising it as an affirmative defense, and even if it was not waived, public policy did not forbid the Beckers' claim. It also held that the Beckers were third-party beneficiaries. A trial was held and a jury awarded damages to the Beckers, finding that Crispell-Snyder completed more work than necessary, overcharged the Beckers for change orders and negligently handled the excavator's bid.

¶ 8.  Crispell-Snyder appeals, claiming that the Beckers are incidental—not third-party—beneficiaries, that the jury had insufficient evidence to support its verdict, and that common-law immunity or public policy bars the Beckers' claims. We will address each, in turn.

## THIRD-PARTY BENEFICIARY STATUS

¶ 9.  A party wishing to enforce a contract must either be a party to that contract or a third-party beneficiary. *See Schilling v. Employers Mut. Cas. Co.*, 212 Wis. 2d 878, 886–87, 569 N.W.2d 776 (Ct. App. 1997). In this case, the Beckers were a party to the developer's agreement, but not the public works contract. Crispell-Snyder was a party to the public works contract, but not the developer's agreement. Therefore, if the Beckers wanted to maintain a breach of contract claim against Crispell-Snyder, they had to prove that they were a third-party beneficiary to the public works contract. *See id.*

¶ 10. Crispell-Snyder claims that the Beckers were not third-party beneficiaries because they failed to show how the contract between the town and Crispell-Snyder directly and primarily benefited them. The facts regarding this particular issue are not in dispute and require applying the law to the undisputed facts. Therefore, we will review this claim de novo. *See Szymczak v. Terrace at St. Francis*, 2006 WI App 3, ¶¶ 10–11, 289 Wis. 2d 110, 709 N.W.2d 103 (addressing summary judgment).

¶ 11. A third-party beneficiary is one who the contracting parties intended to "directly and primarily" benefit. *Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692, 699, 139 N.W.2d 606 (1966). A party proves its third-party beneficiary status by pointing to specific language in the contract establishing intent. *Schilling*, 212 Wis. 2d at 886–87. The benefit proven must be direct; an indirect benefit incidental to the primary contractual purpose is insufficient. *Sussex Tool*, 231 Wis. 2d at 409. The scope of potential third-party beneficiaries to public works contracts is more restrictive than other contracts because the primary purpose of a public works contract is to benefit the public. *See id.* at 411.

¶ 12. Crispell-Snyder claims that the facts here parallel *Sussex Tool* because this is a public works contract with the primary purpose of ensuring that a public body, the town, inherits infrastructure that meets its standards. In its opinion, the fact that the infrastructure was in the Beckers' development was only incidental. It asserts that the Beckers' only benefit was the same as the complainant's in *Sussex Tool*—profit as a result of the improvements, an incidental benefit at best.

¶ 13. In *Sussex Tool*, a village hired a contractor for a sewer project and the contractor promised to provide vehicular access to properties affected by the

project. *Id.* at 407. The complainant was a small business located on the street the contractor was working on. *Id.* It sued because the project decreased accessibility to its customers, causing it to lose profits. *Id.* The public works contract, however, did not specifically or expressly refer to business access or define a limited group of third parties that the contractor would provide vehicular access for, nor did it expressly state that the contractor would assume liability for its promise. *Id.* at 413, 416. We held that these three deficiencies were fatal to the business's claim. *Id.* at 415–16. We determined that while the contract did somewhat vaguely circumscribe the number of possible third-party beneficiaries, "it d[id] not have the specificity required for the court to infer an intent to assume liability for damages." *Id.* at 416. Therefore, the complainant was an individual member of the public and not a third-party beneficiary. *Id.*

¶ 14.   In this case, the evidence of the oral contract between the town and Crispell-Snyder is not specific enough for us to examine the parties' intent through specific express language. However, we can use the totality of the circumstances to evaluate whether the contract (1) specifically conferred a direct benefit on the Beckers, (2) limited the benefit to a well-defined group of third parties, and (3) required the contractor to assume liability to third parties. *See Isaac v. Gerretson Co.*, 179 Wis. 417, 423–24, 191 N.W. 55 (1922) (establishing the parties' intent based on the facts and circumstances surrounding the oral contract); *see also Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis. 2d 363, 371–72, 260 N.W.2d 721 (1978) (determining third-party beneficiary status to an oral contract based on the facts and circumstances).

368

¶ 15. The Beckers have met the first two factors based on facts establishing their indispensability to the contract. The town and Crispell-Snyder entered into the contract because the Beckers needed an engineer to oversee their development. The direct benefit to the Beckers, therefore, was engineering oversight, not simply future possible profit. And, the only other third party in the same situation as the Beckers was the neighboring developer who also had to use Crispell-Snyder to oversee construction. Thus, the Beckers have met the first two factors.

¶ 16. The third-party creditor-debtor relationship rule from *Severson v. Milwaukee Auto. Ins. Co.*, 265 Wis. 488, 494–95, 61 N.W.2d 872 (1953), assists our evaluation of the third factor. *Severson* held that "where one person, for a consideration moving to him from another, promises to pay to a third person a sum of money," that third person becomes a third-party beneficiary and the contract immediately establishes a creditor-debtor relationship between the contractual parties and that third party. *Id.* (citing *Tweeddale v. Tweeddale*, 116 Wis. 517, 526, 93 N.W. 440 (1903)). Here, the contract, in concert with the developer's agreement, implicated the Beckers as a debtor to Crispell-Snyder because Crispell-Snyder submitted bills that the town approved and paid through the Beckers' line of credit. While in *Severson*, the third party benefited by the promise of money, and here, the third party is liable to pay money, both create a binding creditor-debtor relationship. We deem it unimportant as to which side of the creditor-debtor relationship the third party lays. The contract between the town and Crispell-Snyder imposed a liability on the Beckers because the parties knew that the Beckers would be left holding the bag. Conversely, the parties knew that in

return for paying, the Beckers would receive the engineering services it needed to see the project through.

¶ 17. The Beckers have met all three factors found in *Sussex Tool*. Therefore, we hold that they were a third-party beneficiary of the public works contract between the town and Crispell-Snyder.

## SUFFICIENCY OF THE EVIDENCE

¶ 18. The jury found that Crispell-Snyder breached its contract with the town and awarded the Beckers damages for three change orders, excess inspection fees, and the excavator's claim. After trial, the court specifically approved the jury verdict and upheld it against Crispell-Snyder's postverdict motions, stating that the jury took their "responsibility seriously" and "let [their] verdict speak the truth."

¶ 19. Crispell-Snyder argues that there is no evidence supporting a breach of contract; rather, the evidence showed only that it completed "too much" work resulting in a higher price. In its view, its work would have had to be incomplete or defective before it could be called a breach. It also argues that there cannot be a breach since the town never complained about its work and, moreover, all the work performed was within the scope of the developer's agreement.

¶ 20. The jury is the ultimate arbiter of credibility, and appellate courts review evidence in the light most favorable to the verdict. *Roach*, 73 Wis. 2d at 536. Courts must search the record for credible evidence that sustains the jury's verdict, not the verdict preferred by the appellant. *Heikkinen*, 296 Wis. 2d 438, ¶ 42. We will not overturn the jury's verdict if we find

370

such support. *See Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979). This is particularly true where, as here, the verdict has the approval of the trial court and the circuit court upheld the jury's verdict in the face of the appellant's postverdict motions. *See Kenwood Equip., Inc. v. Aetna Ins. Co.*, 48 Wis. 2d 472, 478, 180 N.W.2d 750 (1970).

¶ 21.  At trial, representatives of both contractual parties—Morris and Crispell-Snyder's manager in charge of the Beckers' development—testified that implicit in the contract was that Crispell-Snyder would bill for only "reasonable and necessary" work. Therefore, the jury could find a breach of contract if credible evidence showed, under any reasonable view, that Crispell-Snyder billed for unreasonable or unnecessary work. And that is just what the jury found. Again, we reiterate that we will only set forth the credible evidence supporting the verdict.

## A. *The Change Orders*

¶ 22.  Evidence at trial showed that, under one reasonable view, Crispell-Snyder's three change orders were either unnecessary or unreasonable. The Beckers testified that they objected to all three change orders but felt, given the town's ultimatum, they had no choice but to sign them.

¶ 23.  The first change order had to do with compaction of the roads prior to paving. To test compaction, a heavy truck runs over the road and the road is visually inspected for deflection in the surface; this is called a "proof roll." At issue was why this compaction test failed the first time. Crispell-Snyder believed it was necessary to apply "fly ash" to solve what it perceived to

be a problem. The Beckers thought the problem was the constant road traffic making the clay subsurface pliable, which would resolve itself once all the construction traffic was out of the way. The Beckers wanted to wait until that occurred and see if the clay would stiffen. The Beckers' expert explained to the jury that the way to resolve a failed proof roll was precisely to simply let the roadway dry out and keep traffic off it. But Crispell-Snyder went ahead and applied the fly ash. The jury heard that traffic did wane for a week after the fly ash was applied and the second proof roll passed but not, according to the Becker's expert, because of the fly ash. Thus, there was evidence that the change order was unnecessary.

¶ 24.   The second change order concerned the rerouting of a sanitary sewer and force main stemming from delayed construction. This work had to be done before the road could be paved. The evidence was that there was a window of opportunity to perform this work before the paving took place. The design was in place and approved, the contractor was ready to go and, yet, it did not get done. The road was paved without the pipe. After paving, Crispell-Snyder knew that there was an obstruction because someone placed extra concrete near the manhole in the middle of the road. This obstruction meant they could not drill to install the sewer. The jury had all the evidence it needed to find that this "unforeseen condition" resulted from Crispell-Snyder's own decision not to go ahead with the sewer and pipe main before the road was paved.

¶ 25.   The third change order had to do with as-built accounting charges that were basically unprovable. The jury awarded damages in the amount of the gravel quantities charged for fixing soft spots in the roadway. There was inconsistent testimony between

the amount the contractor said he used and the amount charged. The evidence was sufficient to assess this overcharge to Crispell-Snyder.

■

¶ 26.   Even in the face of this evidence, Crispell-Snyder asserts that the Beckers waived their right to dispute the change orders because they signed them.[2] But this is a question of fact, not a question of law, and the jury obviously believed the Beckers' claims that they had no choice but to sign the change orders. We will not disturb the jury's verdict regarding the change orders.

### B. The Over-Inspection Fees

¶ 27.   Evidence also supports the jury's finding that Crispell-Snyder billed the Beckers for its over-inspection. On cross-examination, one of Crispell-Snyder's witnesses admitted that no government regulation required the "24/7" inspection for which it billed the Beckers. One of Crispell-Snyder's own employees testified that he logged inspection hours where he

---

[2] Crispell-Snyder also relies on *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 9, 571 N.W.2d 656 (1997), and *Broadbent v. Hegge*, 44 Wis. 2d 719, 726, 172 N.W.2d 34 (1969), to argue that the Beckers waived their right to dispute the developer's agreement, change orders, and engineering fees as a matter of law, which is to be inferred from the parties conduct. However both cases discussed waiver of statutory requirements to establish jurisdiction. *Milas*, 214 Wis. 2d at 8, 10–11; *Broadbent*, 44 Wis. 2d at 722–23. Crispell-Snyder does not allege that the Beckers waived any statutory requirements. Therefore, its reliance is misplaced. Further, evidence showed that the Beckers did vigorously object to signing these documents, which is evidence that they did not intend to waive their right to dispute them.

admitted that he was there for no purpose. The Beckers' expert testified that these and other charges were unnecessary and unreasonable. Given this evidence, the jury had sufficient, credible evidence to find that Crispell-Snyder breached its contract by charging for its over-inspection and award the Beckers $12,000.

### C. The Excavator's Lawsuit

¶ 28. Crispell-Snyder also refutes the sufficiency of the evidence supporting the jury's verdict on the excavator's claim.[3] At trial, the Beckers prevailed on their argument that the only reason the excavator had a claim was because Crispell-Snyder negligently provided exact quantities in its specifications, known in the record as the "manual."

¶ 29. Both parties' experts testified that the excavator was misled by the specific quantities that Crispell-Snyder put in the manual. As a result, the excavator had to move more dirt than it had originally thought. Crispell-Snyder asserts that the Beckers' expert's testimony was based on pure speculation. However, the trial testimony shows that the excavator did use the quantity listed in the manual as its benchmark. The Beckers' expert also explained why putting specific quantities in the manual is a negligent act. Therefore, the jury had

----

[3] Crispell-Snyder also asserts that the trial court should not have presented the excavator's claim to the jury because it stems from an ancillary lawsuit. Crispell-Snyder cited no law supporting this assertion and the circumstances do not support it. The town settled the excavator's lawsuit, and then sent the bill to the Beckers. And the claim involves the same parties and much of the same factual background. Therefore, the trial court properly submitted it to the jury.

sufficient evidence to find that Crispell-Snyder's negligence caused the excavator's litigation.

## COMMON-LAW IMMUNITY

¶ 30.　Crispell-Snyder next cites law to argue that a road construction engineer is placed in a position somewhat analogous to that of an umpire or an arbitrator. It is within the engineer's professional judgment as to what decisions to make regarding the amount of materials, the need for delay, the decision to proceed and other decisions of that nature. Crispell-Snyder cites Wisconsin law that says: "[W]hen parties agree to rely upon the judgment and skill of an architect or engineer in determining the value of work and materials under municipal contracts, they must abide by the estimate of the umpire chosen, or impeach it upon sufficient legal grounds." *City of Wauwatosa v. Jacobus & Winding Concrete Const. Co.*, 223 Wis. 401, 408–09, 271 N.W. 21 (1937). Crispell-Snyder further cites the law that the only way this quasi-immunity is abrogated is when the plaintiff has proven fraud, mistake, bad faith, arbitrariness, caprice or other like circumstances. *Id.* at 407. Crispell-Snyder also submits that, as a matter of public policy, developers should be foreclosed from forcing an engineer to use "shortcuts, cost-cutting techniques, or sacrificing sound professional judgment all in an effort to enhance the [developer's] profit margins."

¶ 31.　This exhortation of the law is all fine, well and good, except for one thing. It never raised immunity as an affirmative defense. WISCONSIN STAT. § 802.06(2) (2005–06) states, in pertinent part, that: "[e]very defense, in law . . . except . . . improper venue . . . *shall* be asserted in the responsive pleading . . . ." (Emphasis

added.) While the statute provides exceptions, immunity is not one of them. The circuit court rejected the immunity argument on this ground. Courts deem as waived affirmative defenses not raised in accordance with § 802.06(2) in responsive pleadings. *See Gustavson v. O'Brien*, 87 Wis. 2d 193, 204, 274 N.W.2d 627 (1979).[4] Discretionary immunity is an affirmative defense that must be raised in the pleadings or the court deems it waived. *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 34, 559 N.W. 2d 563 (1997).[5] We hold that the circuit court correctly found waiver. We affirm the judgment in its entirety.

*By the Court.*—Judgment affirmed.

---

[4] Crispell-Snyder also argues that even if the Beckers are third-party beneficiaries, public policy considerations must limit its liability as a matter of law. It posits that its professional judgment will be set aside and the town's interest in properly built infrastructure will suffer if engineers are liable to private developers and have to satisfy the developer's cost-saving objectives.

We agree with the circuit court, though, that the liability imposed on Crispell-Snyder is not so extraordinary or out of balance with the culpability of Crispell-Snyder, since the award is in fact-based on its own invoices. We also note that much of the reasoning in Crispell-Snyder's public policy argument is similar to its common-law immunity argument, which we reject. Therefore, we refuse to bar liability as a matter of public policy under this case's facts.

[5] Therefore, we will not discuss Crispell-Snyder's discretionary immunity claim as it applies to the facts in this case. We do note, however, that one of the exceptions to discretionary immunity listed in *City of Wauwatosa v. Jacobus & Winding Concrete Const. Co.*, 223 Wis. 401, 407, 271 N.W. 21 (1937), is when a professional has acted in an arbitrary manner. This is exactly what the Beckers' claim.