COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP675**

Cir. Ct. No. **2020CV104**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

CHRISTOPHER J. BREKKEN,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

HEGLAND CUSTOM CONSTRUCTION, INC.,

DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher J. Brekken appeals from the circuit court's order, entered following a bench trial, dismissing Brekken's breach of

contract claim against Hegland Custom Construction, Inc.[1]  Brekken contracted with a general contractor, Gordon Larson and Gordon Larson Construction LLC (collectively, Larson), which thereafter engaged Hegland's services as a subcontractor.  Hegland cross-appeals from the court's order, which also dismissed Hegland's counterclaim against Brekken for unjust enrichment.  For the reasons that follow, we reject Brekken's arguments and affirm the court's order. Therefore, we need not address Hegland's cross-appeal, which was brought to seek alternative relief if we reversed the court's decision on Brekken's direct appeal.

## BACKGROUND

¶2      Brekken entered into a construction contract with Larson to build Brekken's home in Prescott, Wisconsin (hereinafter, the GLC contract).  Larson then subcontracted with Hegland to perform framing and carpentry work (hereinafter, the Hegland-Larson contract).  According to the Hegland-Larson contract, Hegland's services were to be completed for the agreed-upon price of $129,769.83, but "changes or additions" were to be addressed "in a change order" and billed at $55.00 per hour "unless otherwise agreed upon."

¶3      During construction of the home, Hegland would submit invoices to Larson for payment.  Larson would then include the invoices with "draw requests" that would be submitted to a title company that paid the draw requests through Brekken's construction loan.  Both Brekken and Larson needed to approve the draw requests before payments were made.

---

[1] Adam Hegland is the owner and president of Hegland Custom Construction, Inc.  We will refer to them collectively as "Hegland."

2

¶4    According to Hegland, Larson requested that Hegland perform additional work on the home, and these additional items were included on the invoices Hegland submitted to Larson and were sometimes listed on those invoices as "change orders." At trial, Hegland testified regarding multiple issues with the project that necessitated this additional work.[2]

¶5    Brekken claimed, however, that he did not approve any change orders or additional charges for the work to be completed by Larson or Hegland, and he maintained that the GLC contract and the Hegland-Larson contract were for a fixed fee. In fact, on the draw request dated January 24, 2020, Brekken handwrote a message, stating, "I do not agree with [the] change orders, but I will deal with this going forward on the next draw request." (Formatting altered.)

¶6    Ultimately, on May 8, 2020, Hegland and Larson entered into an amendment to the Hegland-Larson contract. The May 8 amendment stated: "Due to the numerous change orders to the Brekken residence, the contract needs to be revised to accommodate for the overages." The amendment increased the per-hour payment rate and identified a list of extra work that was not included in the original bid. There is no dispute that Brekken was not aware of the May 8 amendment signed by Hegland and Larson until after this lawsuit commenced.

¶7    Eventually, Brekken refused to make any further payments to Hegland, and, as a result, Hegland stopped its work on the home in June 2020.[3]

---

[2] James Edward Sabin, owner of Artisan Building Company LLC, worked with Hegland on the home, and he also testified at trial regarding these issues.

[3] Later, Larson also discontinued work on the home, stating in a letter to Brekken that he was "shutting down Gordon Larson Construction LLC" due to financial issues.

Hegland informed Larson by e-mail on June 28, 2020, that it would not continue working on the home until it received payment on the invoices that had previously been submitted. This information was communicated to Brekken. Instead of paying those amounts, Brekken hired another company to complete the remaining work required.

¶8    Thereafter, Brekken filed this lawsuit against Hegland, asserting claims for breach of contract, conversion, and theft by contractor.[4] According to the complaint, Hegland "ha[d] not completed the work required under the [Hegland-Larson contract] and ha[d] been overpaid for the work that ha[d] actually been completed by Hegland." Brekken asserted that he was "an expressly named third[-]party beneficiary" of the Hegland-Larson contract. He sought monetary damages as well as costs and attorneys' fees.

¶9    Hegland responded with a counterclaim, alleging a cause of action for unjust enrichment. According to Hegland's counterclaim, Hegland was "asked to provide more services than contemplated by the [Hegland-Larson] contract that was in place," and, "[a]s a result, [Hegland was not] paid for all labor, services and materials that [it] provided."

¶10    The parties filed cross-motions for summary judgment. Brekken sought summary judgment on his breach of contract claim and dismissal of Hegland's unjust enrichment counterclaim. Hegland's motion argued that all three of Brekken's claims should be dismissed.

---

[4] Brekken filed a separate suit against Larson and, based on an agreement between the parties, obtained a judgment in the amount of $74,682.

4

¶11    The circuit court held a nonevidentiary hearing[5] on the motions. Based on the written submissions and arguments of the parties, the court denied summary judgment to both Brekken and Hegland on the breach of contract claim; granted partial summary judgment to Hegland, dismissing Brekken's conversion and theft by contractor claims; and denied Brekken's motion as to Hegland's unjust enrichment counterclaim.[6]

¶12    The circuit court then held a two-day bench trial on the parties' remaining claims.  Brekken, Hegland, and Sabin testified.  The court entered a written decision and order concluding, first, that Brekken had failed to prove his breach of contract claim because there was no enforceable contract between Brekken and Hegland.  The court also determined that even if there were an enforceable contract between the parties, Brekken had failed to establish either a breach of that contract or damages.  Finally, the court concluded that Hegland had also failed to meet its burden to prove its unjust enrichment counterclaim.  The court ordered both the claim and the counterclaim dismissed.  Brekken appeals, and Hegland cross-appeals.[7]

---

[5] The transcript from the summary judgment hearing was not included in the record on appeal.

[6] The parties do not challenge the circuit court's summary judgment ruling on appeal.

[7] Hegland repeatedly refers to the parties by party designation, rather than by name, throughout its appellate briefs, in violation of WIS. STAT. RULE 809.19(1)(i) (2021-22).  We caution Hegland's counsel to avoid similar future violations of the Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.83(2) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**DISCUSSION**

¶13    We employ a well-established standard upon review of a circuit court's decision following a bench trial. That standard is highly deferential to the circuit court's findings of fact. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530. "On review of a factual determination made by a [circuit] court without a jury, an appellate court will not reverse unless the finding is clearly erroneous." *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983) (citing WIS. STAT. § 805.17(2)). "Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12 (citation omitted).

¶14    Whether the facts found by the circuit court constitute a breach of contract is a legal issue that we review de novo. *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶10, 267 Wis. 2d 873, 672 N.W.2d 141. As relevant here, the interpretation of a contract also presents a question of law for our independent review. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.

¶15    A successful breach of contract claim requires proof of three elements: (1) the existence of an enforceable contract; (2) a breach of that contract; and (3) damages. *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582. The circuit court determined that Brekken failed to establish all three elements. On appeal, Brekken primarily addresses the first element, presenting three arguments for the existence of an enforceable contract: (1) Brekken is a third-party beneficiary of the

Hegland-Larson contract; (2) Brekken has an express contract with Hegland based on integrated writings; and (3) Brekken has an implied contract with Hegland based on the conduct of the parties. For the reasons that follow, we reject each of Brekken's arguments.

## I. Third-Party Beneficiary

¶16 "A party wishing to enforce a contract must either be a party to that contract or a third-party beneficiary." **Becker v. Crispell-Snyder, Inc.**, 2009 WI App 24, ¶9, 316 Wis. 2d 359, 763 N.W.2d 192; *see also* **Schilling v. Employers Mut. Cas. Co.**, 212 Wis. 2d 878, 886, 569 N.W.2d 776 (Ct. App. 1997). Brekken is undisputedly not a party to the Hegland-Larson contract; therefore, to establish a breach of contract claim based on the Hegland-Larson contract, Brekken had to prove that he was a third-party beneficiary of that contract.

¶17 "The person claiming to be a third-party beneficiary must show that the contract was entered into by the parties to the contract directly and primarily for the benefit of the third party." **Schilling**, 212 Wis. 2d at 886-87. However, "[a]n indirect benefit incidental to the contract is not sufficient"; instead, "[*t*]*he contract* must indicate that the third party either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit." **Id.** at 887 (emphasis added); *see also* **Schell v. Knickelbein**, 77 Wis. 2d 344, 349, 252 N.W.2d 921 (1977).

¶18 We agree with the circuit court's conclusion that Brekken is not a third-party beneficiary of the Hegland-Larson contract. In this case, Brekken is the homeowner, and Hegland is the subcontractor. As the circuit court recognized, courts in Wisconsin have not clearly addressed the issue of whether a homeowner can claim to be a third-party beneficiary of a contract between a general contractor

and a subcontractor. *See* ***Linden v. Cascade Stone Co.***, 2005 WI 113, ¶31, 283 Wis. 2d 606, 699 N.W.2d 189. Nevertheless, traditionally, absent any indication to the contrary in an agreement, homeowners have not been found to be intended or third-party beneficiaries of contracts between contractors and subcontractors.[8] *See* RESTATEMENT (SECOND) OF CONTRACTS § 302 cmt. e. & illus. 19 (1981); *see also* ***Pierce Assocs., Inc. v. Nemours Found.***, 865 F.2d 530, 535-36 (3d Cir. 1988).

¶19 Brekken claims, however, that the Hegland-Larson contract language demonstrates Hegland and Larson's intent that Brekken was to be a beneficiary of their contract. According to Brekken, "[t]he evidence at trial clearly established that the intention of the parties here was for Hegland to perform for a set price specifically stated carpentry and framing in the construction of Brekken's residence to satisfy an obligation of Larson as part of the [GLC] contract," and, as such, "[t]here can be no legitimate argument that the framing and carpentry promised by Hegland was intended to benefit anyone other than Brekken as the owner of the Brekken [r]esidence." In support, Brekken claims that the Hegland-Larson contract expressly references Brekken and the residence, stating: "This contract is regarding the framing construction of a new home located at [an address in Prescott, WI] with a residence name of Brekken and Gordon Larson Construction LLC named on the plan."

---

[8] Brekken cites three cases from other jurisdictions—all cited perfunctorily by our supreme court in ***Linden v. Cascade Stone Co.***, 2005 WI 113, ¶31 n.4, 283 Wis. 2d 606, 699 N.W.2d 189, and all decided over forty years ago—which he states concluded that a property owner was a third-party beneficiary in a suit against a subcontractor. Brekken fails, however, to discuss the factual circumstances of those cases or develop an argument as to why we should apply those courts' holdings in Wisconsin. We need not address undeveloped arguments. ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶20 We disagree that the Hegland-Larson contract was "entered into by the parties to the contract directly and primarily for the benefit of" Brekken. *See Schilling*, 212 Wis. 2d at 886-87. Importantly, the Hegland-Larson contract does not explicitly state that Brekken is an intended third-party beneficiary of the contract. At best, the Hegland-Larson contract identifies Brekken as the property owner and identifies the address of the property. Beyond those mentions, Brekken fails to identify other language in the contract demonstrating intent of a direct and primary benefit. The mention of Brekken's name and the address of the property alone is insufficient to establish third-party beneficiary status. Brekken is merely an incidental beneficiary of the Hegland-Larson contract, not an explicit intended beneficiary. As the circuit court stated, "Certainly nothing in these brief sentences evidences an intention on the part of the contracting parties to include [Brekken] as a beneficiary. In fact, these references do not even fully identify who the owner is—there is not a full name, no contact information, or anything else specifically identifying [Brekken] at all." Under Wisconsin law, this defeats Brekken's claim.

¶21 Brekken's remaining evidence is similarly unavailing. First, Brekken claims that "Hegland submitted draw requests to [the title company] directing that checks be made payable to Hegland for 'carpentry' and 'framing' that were paid by Brekken through the construction loan that was processed by the title company." Thus, Brekken asserts that "[t]he evidence at trial clearly established that Larson did *not* pay Hegland—payments were made *by Brekken* from a construction loan to Brekken that was processed through the title company."

¶22 Initially, we note that the draw requests were not contained within or attached to the Hegland-Larson contract, and Brekken does not appear to argue that these documents were somehow incorporated into the contract or that there is

a basis for us to review extrinsic evidence. Even if we were to consider these documents as part of the contract, however, we would not agree that they demonstrate Hegland and Larson's intent to enter into the Hegland-Larson contract "directly and primarily" for Brekken's benefit. *See id.*

¶23 Brekken claims that the draw requests are proof that Brekken paid Hegland, not Larson; however, we fail to see how this fact demonstrates specific intent by the contracting parties. In particular, Brekken claims that "the case at bar is a situation where the homeowner paid the subcontractor directly"; thus, RESTATEMENT (SECOND) OF CONTRACTS § 302 illus. 19, "cited by Hegland[,] is not applicable." However, according to the testimony presented at trial, Hegland did not submit its invoices to Brekken. The invoices were submitted to Larson, which in turn submitted the draw requests for payment to the title company. While Brekken approved the draw requests, the title company paid the draw requests; Brekken did not pay them directly. Further, Brekken cites no legal authority in support of his claim that this payment structure somehow establishes intended third-party beneficiary status where the written contract fails to do so. While the draw requests identify "Christopher Brekken" as the borrower, we fail to see how that establishes that the Hegland-Larson *contract* "indicate[s] that [Brekken] was specifically intended by the contracting parties to benefit from the contract." *See **Schilling***, 212 Wis. 2d at 887.

¶24 The waiver of mechanic's lien rights forms and the mechanic's lien provisions in the contracts likewise provide no basis to find that Brekken is a third-party beneficiary of the Hegland-Larson contract. Again, even if we were to consider these documents as part of the Hegland-Larson contract, the mechanic's lien rights forms say nothing about the parties intending that the contract benefit Brekken. Further, the mechanic's lien provisions in the contracts similarly lack

any mention of Brekken or whether he is an intended beneficiary of the Hegland-Larson contract. The mechanic's lien provisions merely provide for a lien against Brekken's property based upon statutory rights.

¶25 Finally, Brekken argues that the Hegland-Larson contract established a creditor-debtor relationship "between Brekken and Hegland through the lien rights provisions." (Formatting altered.) He cites *Becker* for the "third-party creditor-debtor relationship rule." According to Brekken, "[a]s in *Becker*, Larson and Hegland both knew that Brekken was the party paying for the carpentry and framing services through the draw request process" and "specifically conferred a direct benefit to Brekken, limited the benefit to Brekken[,] and obligated Brekken to pay subcontractors if they were not paid." These facts, Brekken claims, "squarely meet the requirements for third-party beneficiary status."

¶26 In *Becker*, we determined that the property owners developing the land were third-party beneficiaries of an oral contract between the town and the town's engineering firm. *Becker*, 316 Wis. 2d 359, ¶1. We stated that "the evidence of the oral contract between the town and [the engineering firm] is not specific enough for us to examine the parties' intent through specific express language." *Id.*, ¶14. Instead, we "use[d] the totality of the circumstances to evaluate whether the contract (1) specifically conferred a direct benefit on the [property owners], (2) limited the benefit to a well-defined group of third parties, and (3) required the contractor to assume liability to third parties." *Id.*

¶27 We concluded that the first two factors were met because there was a direct benefit to the property owners because they needed an engineer to oversee their project, and the benefit was "not simply future possible profit." *Id.*, ¶15. We

11

stated that the third-party creditor-debtor relationship rule from *Severson v. Milwaukee Automobile Insurance Co.*, 265 Wis. 488, 494-95, 61 N.W.2d 872 (1953), "assists our evaluation of the third factor" because "the contract, in concert with the developer's agreement, implicated the [property owners] as a debtor to [the engineering firm] because [the firm] submitted bills that the town approved and paid through the [property owners'] line of credit." *Becker*, 316 Wis. 2d 359, ¶16.

¶28 We disagree that *Becker* controls this case. *Becker* involved an oral contract, while we have a written contract to review in this case. There is no indication in *Becker* that the totality of the circumstances analysis, including the three-factor analysis, applies when there is an express, written contract. *See id.*, ¶14; *Schilling*, 212 Wis. 2d at 887. As we stated above, the Hegland-Larson contract does not demonstrate a clear intent to directly and primarily benefit Brekken. Regardless, we do not agree that an alleged creditor-debtor relationship between Hegland and Brekken, based on the draw requests, would defeat the express terms of the written contract.

¶29 Current Wisconsin law states that a party cannot be considered a third-party beneficiary of a contract absent an "indicat[ion] that the third party either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit." *Schilling*, 212 Wis. 2d at 887. Here, the Hegland-Larson contract does not identify Brekken as a third-party beneficiary; Brekken was merely an incidental beneficiary of the contract. Therefore, the circuit court did not err in reaching that same conclusion.

## II. *Contract Based on Integrated Writings*

¶30     Next, Brekken argues that he had a direct contract with Hegland pursuant to integrated writings of the parties.  In particular, he asserts that the GLC contract and the Hegland-Larson contract "both relate to a common transaction and have the same objective—labor and materials for the Brekken [r]esidence." Brekken suggests that the payment schedule set forth in the Hegland-Larson contract "was abandoned" in favor of "the monthly progress payments schedule set forth in the [GLC contract] providing for direct payments from the Brekken construction loan through the title company directly to Hegland," which process Hegland "knew of and participated in."  Accordingly, Brekken claims that the GLC contract, the Hegland-Larson contract, "the invoices from Hegland, the draw requests signed by Larson and Brekken, the lien waivers signed by Hegland for the payments by Brekken through the title company, [and] the deposits of the Brekken payments through the title company to the Hegland bank account" all encompass separate writings that together constitute an integrated contract.

¶31     Brekken cites WIS JI—CIVIL 3040 (1993) for support.  That jury instruction provides:

> Separate writings which constitute an integrated contract must be construed together as to all persons who had notice of their contents and their relation to each other for the purpose of determining the character of the transaction and the true intent and agreement of the parties.
>
> To be taken together as evidencing an integrated contract, the writings must not only relate to a common transaction, but must have the same objective.  It is for the jury to determine the overall agreement of the parties from the several writings.

¶32     After the bench trial, the circuit court concluded that the previously identified separate writings did not constitute an integrated contract because all the

13

parties involved did not have notice of the documents or their contents. As the court observed, WIS JI—CIVIL 3040 (1993) states that "[s]eparate writings which constitute an integrated contract must be construed together *as to all persons who had notice of their contents and their relation to each other*." (Emphasis added.) The court found, based on the evidence presented, that Hegland "had not seen or review[ed] the [GLC] contract; [Brekken] had not seen or review[ed] the Hegland[-Larson] [c]ontract or the [a]mendment to the contract; [and Hegland] did not see the draw requests." Therefore, the court concluded that "[w]ithout the individual parties having any knowledge of the other documents, this is not an integrated contract."

¶33 On appeal, Brekken does not identify competing evidence from which the circuit court could have drawn different conclusions. In fact, Brekken fails entirely to address the court's findings or Hegland's arguments on the subject; instead, in his reply brief, he simply restates his argument in a conclusory manner and amends his "list" of integrated writings.[9] Thus, we have not been

---

[9] In his reply brief, Brekken states the list as follows: (1) the GLC contract; (2) the Hegland-Larson contract; (3) "the Brekken architectural plans incorporated into the" Hegland-Larson contract; (4) "invoices from Hegland for the framing and carpentry work done at Brekken's residence with draw requests that separately list Hegland, the amount to be paid to Hegland and identify Brekken by name and address"; (5) "lien waivers from Hegland that specifically name Brekken, Brekken's address and the amount paid by Brekken to Hegland"; (6) "direct payments by Brekken by checks from Brekken's construction loan account made payable to Hegland"; and (7) "bank statements of Hegland showing the deposits of the checks from Brekken to Hegland." (Formatting altered.)

To the extent that Brekken is attempting to present a new argument—i.e., possibly that the integrated writings included only items that Hegland had notice of, which was all the notice that was necessary to create an integrated contract—we still note that Brekken's testimony at trial was that he did not review the Hegland-Larson contract until after this lawsuit began. Thus, even if Hegland had notice of these documents, Brekken still would not have had notice of the contents of the Hegland-Larson contract. Regardless, we need not address arguments raised for the first time in a reply brief. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

presented with any reasons to believe that the evidence presented at the trial was insufficient to support the court's determination that the separate writings did not constitute an integrated contract or that the court's finding was otherwise clearly erroneous.

*III. Implied Contract*

¶34 Finally, Brekken claims that he had an implied contract with Hegland based on the conduct of the parties. He states that

> [a]n agreement may be established by the conduct of the parties without any words being expressed in writing or orally, if from such conduct it can fairly be inferred that the parties mutually intended to agree on all the terms. This type of agreement is known as an implied contract. An implied contract may rest partially on words expressed in connection with conduct or solely upon conduct.

*See* WIS JI—CIVIL 3024 (1993). Beyond citing the jury instruction and asserting in a conclusory manner that an implied contract exists, Brekken fails to develop his argument on this point. Brekken attempts to do so in his reply brief by generally restating his arguments before the circuit court, but his arguments are both insufficient and come too late. *See* ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

¶35 The circuit court found that no implied contract existed between Brekken and Hegland. The court based its finding on Brekken's and Hegland's testimony "that they did not deal with each other regarding the work"; the fact that Brekken contacted Larson, and not Hegland, to discuss the project and Hegland also contacted Larson with questions regarding its work; the fact that when individuals "did [eventually] reach out directly to" Brekken, they were "directed to consult with the general contractor"; the fact that Brekken did not review the

15

Hegland-Larson contract or the amendment; and the fact that Brekken "was not consulted about the expanded work requests that … Larson made of [Hegland] and was unaware of the issues [Hegland] was asked to remedy." Thus, according to the court, "[n]one of the evidence points to an implied contract." Given that Brekken does not argue that the court's findings on the issue were clearly erroneous, we have no basis to conclude that the court erred.

¶36 Accordingly, because Brekken was not a third-party beneficiary of the Hegland-Larson contract, because there was no direct contract between Brekken and Hegland based on integrated writings, and because the conduct of these parties did not demonstrate that an implied contract existed between them, we conclude that the circuit court did not err by dismissing Brekken's breach of contract claim on the basis that there was no enforceable contract.

*IV. Breach and Damages*

¶37 As noted above, a successful breach of contract claim requires proof of the existence of an enforceable contract as well as proof of a breach of that contract and proof of damages. *See* **Brew City Redev.**, 289 Wis. 2d 795, ¶11. While Brekken argues the first element on appeal, he does not appear to develop an argument as to the second and third elements. Thus, even if the circuit court erred by finding that there was no contract between Brekken and Hegland and that Brekken was not a third-party beneficiary of the Hegland-Larson contract, the court still found no breach of that contract and no damages. Given that Brekken does not properly develop an argument as to those issues, he cannot succeed on appeal.

¶38 Assuming the existence of an enforceable contract between Brekken and Hegland, the circuit court found no breach of that contract on the basis that

"[i]t is undisputed at the time [Hegland] ceased working on the project there were items from the original contract that had not yet been completed. However, it is also clear from the testimony that [Hegland] completed additional work outside the scope of the original contract." The court found that evidence in the record supported the need for the additional work, the fact that Larson asked Hegland to complete the additional work, and the fact that the contract amendment and change orders for that work existed. The court stated that "[i]f there was an enforceable contract between these parties, then [Brekken] breached the contract by failing to pay the invoices of [Hegland,] which identified the additional work completed under the terms of the contract." Thus, the court explained,

> Essentially, [Brekken] is asking the court to only enforce parts of the contract (the parts that outline work [Hegland] was to perform for a set price) while ignoring others (payment on an hourly basis for change orders). It was only after [Brekken] failed to approve payments under the terms of the contract that [Hegland] ceased work…. [Hegland] cannot be expected to continue to perform under a contract that has already been breached.

¶39 At best, Brekken's arguments on appeal reiterate his assertion before the circuit court that the Hegland-Larson contract was for a fixed amount and was either subject to no changes or required Brekken's approval for changes. The court clearly found otherwise. Based on what we assume to be Brekken's arguments pertaining to the breach of the alleged contract, we conclude that his arguments are entirely conclusory, are not organized in a way that they can be reasonably identified, and do not point to evidence in the record demonstrating that the court erred. *See Associates Fin. Servs. Co. of Wis. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (we do not consider conclusory assertions and undeveloped arguments). The court rejected the notion that the

17

Hegland-Larson contract was for a fixed amount, and Brekken fails to acknowledge that conclusion.

¶40    On the issue of damages, the circuit court determined that because it "found that [Brekken] ha[d] not met his burden relative to the first two prongs of his claim, the court [would] not calculate[] specific damages." On appeal, Brekken states in his brief-in-chief only the following on the topic of damages: "Brekken also has rights to recover the overpayments and the damages caused by the failure on the part of Hegland to perform the agreed-upon carpentry and framing work for the agreed-upon set price." In his reply brief, Brekken attempts to develop an argument that the amount of his damages was equal to the amount of Hegland's overpayment under the original Hegland-Larson contract. Again, Brekken's argument is both insufficient and comes too late. *See A.O. Smith Corp.*, 222 Wis. 2d at 492.

*V. Cross-Appeal*

¶41    Hegland argued its cross-appeal in the alternative. In other words, Hegland raised the issue in its cross-appeal regarding the dismissal of its unjust enrichment counterclaim in the event that we reversed the circuit court's order and concluded that Hegland breached an enforceable contract between the parties. Given that we affirm the court on the breach of contract issue, we need not address Hegland's cross-appeal seeking to overturn the court's conclusion that Hegland had failed to prove unjust enrichment.

¶42    No costs to either party.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.